(C. D. 1411)

WESTINGHOUSE ELECTRIC INTERNATIONAL CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 6, 1952)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., dissenting

OLIVER, Chief Judge: The merchandise involved in this case is described on the invoice as "1—Helm 70 MM. Photofluorographic Camera Complete including two (2) film magazines for American Film Perforation." It was exported from Denmark and entered at the port of Baltimore, Md. It was classified for duty at 20 per centum ad valorem under paragraph 1551, Tariff Act of 1930, as "photographic cameras." It is claimed properly dutiable at 10 per centum ad valorem under paragraph 353 under the same act, as modified, as "* * * X-ray apparatus, instruments (other than laboratory), and devices * * * and parts thereof, finished or unfinished."

The pertinent parts of the above paragraphs read as follows:

PAR. 1551. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem; * * *.

PAR. 353. All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy; * * * and X-ray apparatus, instruments (other than laboratory), and devices; * * * all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

(T. D. 51802 reduced the duty on X-ray apparatus and parts under paragraph 353 from 35 per centum to 10 per centum ad valorem.)

Filed with the papers is a report of the collector at the port of Baltimore, stating that the protested decision was reviewed and affirmed and giving as a basis of such affirmation a special report of the appraiser of merchandise at Baltimore, dated June 15, 1950. This report reads as follows:

The merchandise covered by this protest consists of a camera used in conjunction with, but not as an essential part of, an X-ray machine.

Its purpose is to photograph the image reflected on a screen or mirror by the X-ray apparatus, thus reducing the amount of radiation to which the patient is exposed by the operation of the X-ray.

It is properly dutiable as a camera, lens not chief value, at 20% Par. 1551.

The issues presented by this controversy may be said to be:

(1) Whether or not the imported article is a photographic camera; or,
(2) Whether the imported article is a part of "X-ray apparatus."
(3) If it is found to be both a camera and a part of X-ray apparatus, which of the two provisions is the more specific, and thus should control in determining the dutiable status of the imported article.

The imported article is some kind of a camera. Its final use is a camera use. It is bought and sold as a camera; it is described on the consular invoice as a camera, and one of plaintiff's witnesses so describes it (R. 59). It, however, does not resemble in outward appearance or in operation the ordinary photographic cameras of commerce. It is a specially designed camera made for a particular, limited use in a special field. In the research work being carried on in an effort to determine the presence of stomach cancer in its earliest

stages, it was found impracticable, both from the standpoint of length of time involved and expense, to take large numbers of X-ray photographs in the usual manner on large, full-sized films. To overcome both these objections, this Helm photofluorographic camera was developed. It can function as a camera only in connection with and as part of a specially constructed X-ray unit. While the Helm camera is imported as a separate unit, it cannot be used to take a photograph or picture of anything in the condition in which imported. The X-ray generating unit and the table on which the subject reclines are produced and assembled in this country, and the imported Helm camera is permanently affixed thereto. It has no shutter, as is standard equipment in the ordinary photographic camera of whatever style or design. It has no lens at the front of the camera, as is the case in the ordinary photographic camera, although there is a lens in the rear of the interior of the camera. It does not take a picture of an object or scene, as is the case with the usual photographic camera. It does use sensitized film, but the film used is specially coated to take an impression with a maximum of speed and a minimum of lighting. The front of the camera is set at right angles to the lens and film, so that a cross-section shows a shape like the letter "L." At the top of the camera where it is affixed to the underside of the table there is a fluorescent screen. In operation, the patient is placed on the table. Above the patient and in line with the fluorescent screen is the usual X-ray generating apparatus. When the X-ray apparatus is in operation, the X-rays penetrate the body of the patient and the interior stomach condition is pictured on the fluorescent screen in the form of light and shadow. This shadow picture on the fluorescent screen is reflected by a mirror at the bottom of the column directly beneath the fluorescent screen and is diverted at right angles to another mirror and finally through an aspherical lens to the sensitized film which takes the impression of the shadow picture. The roll of film, about 3 inches in width, has a series of perforations on each edge, designed to mesh with gears, which permits the film being advanced as successive pictures are taken. Unlike the ordinary camera, the film in the Helm camera is always exposed, but the interior of the camera is lightproof and, instead of the usual shutter arrangement to permit the entrance of light, it is the action of the X-rays on the fluorescent screen at the top of the camera that provides the illumination permitting the picture to be made. The X-ray unit is electrically connected with the camera so that its action is synchronized and the operation of the X-ray generator operates the camera. The use of the mirror to deflect the shadow picture to the lens and film instead of having it in a straight line, as in an ordinary camera, avoids the necessity of having what would otherwise be the full focal length of the camera below the table. This would necessitate

raising the table to a height which would be inconvenient for practical use, as the patient would have to climb to a considerable height to reach the table.

The practice of taking rapid, inexpensive X-ray photographs by the photofluorographic method is not entirely new in connection with the general science of radiography.

In the "Complete Photographer," a 10-volume work published in 1942 by the New York National Educational Alliance, Inc., in discussing X-ray photography, there appears in volume 5, page 1845, the following:

In normal X-ray photography (radiography) the X-rays or Roentgen rays pass through the object being examined and strike the special X-ray photographic emulsion directly. * * * Fluorography, on the other hand, uses a regular camera to record the visible images of the X-ray as it is seen on a fluorescent viewing screen. * * *

Fluorography is chiefly concerned with photographing the fluorescent image (set up by X-rays) of medical or industrial subjects. * * * With fluorography, use of 35 m. m. film is possible whereas in regular X-ray photography, where no optical system is used, the film has to be as close to the object as possible, thus always making the film life-size or slightly larger—a slow and expensive feature. On the other hand, with small and inexpensive 35 m. m. or 4 x 5 inch film, a series of fluorograms can be taken with comparatively little trouble and cost. * * * and the screen and camera may be placed at the ends of a light box * * *.

The above, with minor changes, fairly describes the operation of the complete X-ray apparatus in connection with which the Helm camera now before us is used. The imported camera does not use 35 mm. or 4- x 5-inch film, and it can hardly be described as a "regular camera," if by that term is meant the usual camera sold over the counter for ordinary photographic use, but the above description of fluorography makes clear that the necessity for and the practical application of a system of taking rapid, inexpensive X-ray fluorographic pictures was a matter of public knowledge long before the date of the present importation.

As hereinbefore stated, this camera cannot take a picture in the ordinary manner, and if removed from its sealed condition, as permanently affixed to the table, in line with the X-ray beam, it would be incapable of taking a picture of any sort, as it would lose its protective dark interior, and there would be nothing to protect the sensitized film from exposure.

A certain ambiguity exists as to just what the Congress intended to cover by the term "photographic" cameras in paragraph 1551. The provision is not for "cameras." For some reason, Congress has chosen to limit the articles dutiable under this paragraph to "photographic" cameras. An examination of the hearings before the congressional committees does not disclose what, if any, limitations Congress intended to impose by this language. It would, therefore, be reason-

able to assume, and we must conclude, that Congress intended to cover all cameras which take photographs, unless otherwise provided for. This conclusion is supported by some of the decisions of this court and of our appellate court. In *United States* v. *Carl Zeiss, Inc.*, 27 C. C. P. A. (Customs) 12, C. A. D. 54, the article before the court was what was known as a "retinal" camera used exclusively to photograph the eye and suitable for no other purpose. The issue there was between the present provision for "photographic cameras" in paragraph 1551 and the provision for "testing or recording instruments for ophthalmological purposes," under paragraph 228 (a) of the present act. In affirming the decision of this court and holding these cameras to be properly dutiable under the camera provision, our appellate court said (p. 15):

> The involved cameras are used for no purpose other than the taking of photographs, and the mere fact that they are used exclusively to photograph a particular object for a special purpose does not change their status as photographic cameras. It is true they are used exclusively for ophthalmological purposes. * * *

The court also observed (p. 15):

> As is well known, there are many special forms of "cameras, panoramic, binocular, enlarging, etc." Webster's New International Dictionary. See also *United States* v. *E. Leitz, Inc.*, 24 C. C. P. A. (Customs) 139, T. D. 48622, where "photo-micrographic cameras for photo-micrographing metals" were held to be dutiable as photographic cameras * * *.

In *United States* v. *E. Leitz, Inc.*, 24 C. C. P. A. (Customs) 139, T. D. 48622, above referred to, where the merchandise consisted of certain cameras for "photo-micrographing metals" and other articles, the issue was between the camera provision in paragraph 1551, Tariff Act of 1930, and the provision for optical instruments, frames, and mountings therefor, in paragraph 228 (b) of the act. The court, in affirming the decision of this court, commented (p. 142):

> * * * The instruments and the parts involved are obviously included within the provisions of paragraph 1551 for photographic cameras and parts thereof, and are more specifically provided for therein than as optical instruments or frames or mountings therefor, or parts thereof, under paragraph 228 (b), *supra.* * * *

In *Westinghouse Elec. & Mfg. Co.* v. *United States*, reported in 65 Treas. Dec. 1360, Abstract 27304, the article before the court was described as an X-ray camera. It was assessed for duty under paragraph 360, Tariff Act of 1930, as a scientific and laboratory instrument, and claimed to be dutiable as a photographic camera under paragraph 1551 of the same act. Among the other claims in the protest was the claim for classification under paragraph 353 as a therapeutic or X-ray apparatus, other than laboratory. It was held to be properly dutiable, as assessed, as a scientific and laboratory instrument. The evidence in that case established that the article was described on the invoice as an "X-ray camera for X-ray motion pictures," and was

entered as an "X-ray camera." This particular article was attached to the X-ray tube. It was used to take X-ray pictures with as short exposure as possible and was used exclusively in a research laboratory. The court noted:

* * * The device contains no lens and is incapable of producing photographs in the common understanding of the term and can only be operated by a person who has undergone a technical or special course of training. * * *

While, in its condition as imported, the Helm camera before us is incapable of taking any kind of a picture and cannot take a photograph nor use ordinary photographic film and can only function when used with a particular kind of X-ray apparatus, it, nevertheless, in its final use, is a camera which takes and produces a photograph. We, therefore, find that the imported article is a photographic camera as that article is described in paragraph 1551.

There remains the question as to whether this specially designed camera is a part of an X-ray apparatus (paragraph 353), as claimed. Many decisions have been handed down on the controversial question as to when, and under what circumstances, an article is a part of something else. A definition frequently cited as controlling on this subject will be found in an opinion of our appellate court, in *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, where the court said (p. 324):

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* * * *

The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. * * * [Italics quoted.]

The article there before the court was a tripod, and in holding it not to be part of a camera, the court stated (p. 325):

* * * when a tripod and a camera are used together, each "performs its separate function without loss of any of its essential characteristics." Whether separate or joined, each is complete in itself, each is a distinct and separate commercial entity. * * *

While the X-ray generator used in the photofluorographic unit is a separate entity, and the Helm photofluorographic camera is likewise a separate unit or entity, having been imported separately, nevertheless, these items could not function for the purpose for which they were designed and constructed, unless and until they are physically joined and are used together. The Helm camera can function as a camera only when it is permanently affixed to the table in line with the X-ray tube and electrically connected with the X-ray generating unit. Under any other conditions, or if removed from the X-ray apparatus, it could not take a picture of anything.

In determining whether the Helm camera is a part of X-ray apparatus, it must first be decided just what comprises the X-ray apparatus of which it is claimed to be a part. If the X-ray apparatus be confined solely to that portion that generates the X-rays and is limited to the point where the X-rays so generated are projected out of the X-ray tube, then obviously this camera, which is not a part of that particular operation, would not be a part of the X-ray apparatus. If, on the other hand, the entire photofluorographic unit comprises the X-ray apparatus, the imported photofluorographic camera, which is dedicated to use as part of the completed whole without which the unit could not perform the duty for which it was designed or created, should then be considered a part of the X-ray apparatus. That it has a separate name and comes in as a separate unit would not deprive it of the right to be designated as a part of the entire unit. In fact, it could be a part without even being permanently affixed to the unit. It is contended here that the X-ray apparatus could operate without the camera. If by that is meant that X-rays could be generated and projected from the X-ray tube, then such statement would be correct, but without the camera as a part of the completed unit, there would not exist a photofluorographic X-ray apparatus.

In *Steel, Inc.* v. *United States*, 24 C. C. P. A. (Customs) 423, T. D. 48872, the merchandise was a grinding mill which was a revolving cylinder designed to crush or pulverize ore or cement. There was added to the ore or cement in the cylinder a number of forged steel balls so that when the cylinder was revolving, the balls would tumble and, by their tumbling action, crush or pulverize the contents of the cylinder or drum. In holding these balls to be parts of the machine, the court said, page 425:

Appellant further contends that the mechanism will operate without the steel balls or their equivalent, although not for grinding purposes. This is immaterial. It will not function as a grinding mill without them. An ordinary household ice cream freezer would respond to the definitions of a machine with the stirring mechanism removed, but it would not then be an ice cream freezer. We do not think that anyone would contend that such stirring mechanism is not a part of an ice cream freezer.

The court added, page 426:

Inasmuch as the steel balls here involved were manufactured solely for use in grinding mills, and had no other use, and as such steel balls or equivalent articles are necessary for the completion of a grinding mill and indispensable to its use, we are in agreement with the trial court that the imported balls are parts of machines   *   *   *.

Paraphrasing the language used above, it can be said of the photofluorographic camera before us that inasmuch as it was manufactured solely for use in connection with an X-ray apparatus for taking X-ray photographs and had no other use, and as this camera is necessary

for the completion of a photofluorographic unit and indispensable to its use, such a camera is a part of such X-ray apparatus.

The fact that the X-ray apparatus to which the imported Helm camera is permanently affixed can be used without the camera for some other purpose does not, of itself, eliminate this camera from being, for tariff purposes, a part of such apparatus. In *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249, the articles before the court were the familiar perforated paper music rolls used in mechanical player pianos. They were classified under paragraph 467 of the Tariff Act of 1909 as parts of musical instruments. The claim relied upon by the importer was for classification as mere accessories and, therefore, subject to duty based on the component material of chief value, namely, as manufactures of wood or manufactures of paper. In its decision upholding the collector's classification as "parts of musical instruments," the court pointed out (p. 165):

> * * * That the Welte Mignon may be used as an ordinary piano and that it will continue serviceable as a musical instrument without regard to the rolls may be admitted. It can not be admitted, however, that the rolls are not essential to the use of the instrument as a "player piano." Indeed, without the rolls and records the mechanical device which gives the Welte Mignon the status of a "player piano"would be rendered utterly worthless, and the instrument, deprived of the special feature which makes it valuable for the mechanical production of music, would become no better than an ordinary piano.

In like manner, the X-ray apparatus used with the imported camera would be utterly worthless, as a photofluorographic unit, without this camera, and the fact that it would generate X-rays without the camera is not controlling. The court in the *Welte* case, *supra*, continued, referring to the music rolls:

> * * * they are essential constituents of the mechanism which makes it a player piano and are therefore parts of the instrument.

In its decision, the court cited with approval *American Express Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 279, T. D. 33490, where it was held that the records used on gramophones, graphophones, and phonographs were parts of such machines.

In *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, the merchandise before the court consisted of endless wool belts made especially for use on a Fourdrinier paper-making machine in the manufacture of "tissue grade" paper. These belts were held dutiable as parts of the machines, notwithstanding the fact that the machines, without the use of the imported belts, were used in manufacturing other types of paper and, therefore, the use of the machines was not confined to manufacturing a product with the use of the imported article. The court stated (p. 290):

> * * * They were ordered and delivered according to certain specifications for use on a Fourdrinier paper-making machine, and were used for no other purpose. They were essential to the proper use of the machine in the manufacture of "tissue

grade" paper. * * * They were not used as accessories for comfort or convenience in the manufacture of paper, but were used as essential and integral parts, without which the machine could not perform one of its proper and important functions, the only function in which the importer was interested—the manufacture of "tissue grade"paper.

The court further stated (p. 292) with reference to these wool felt paper-making belts:

* * * These articles, when attached to the machine, become as much a part thereof, as the drier frames, carrier frames, guides, and other parts. They will not perform their proper functions as "paper-makers' felts" until they are attached to the machine, nor will the machine function as a complete machine without the "paper-makers' felts." Each is dependent upon the other, and neither will perform its proper function unless used together.

That is the situation which confronts us. Neither the X-ray generating unit nor the imported camera can function as a complete unit without the other. "Each is dependent upon the other, and neither will perform its proper function unless used together." The article before us will not perform its function as a camera until and unless it is used as part of the X-ray apparatus.

In *American Express Co.* v. *United States*, 2 Cust. Ct. 159, C. D. 114, certain metal frames and sheets of sensitized paper, which together constituted a so-called film pack, were held properly dutiable as parts of cameras under paragraph 1551 of the Tariff Act of 1930, rather than as separate entities, the metal frames as manufactures of metal (paragraph 397), and the paper as manufactures of paper (paragraph 1413). It appeared that the metal frame and paper constituted the complete film pack and that the latter was an indispensable part of particular photographic cameras, without which they were incapable of performing the functions for which they were designed. In its decision, the court referred to the incorporated case therein of *American Express Co.* v. *United States*, 73 Treas. Dec. 19, T. D. 49321, involving similar merchandise. In the latter case, the court said (page 22):

From this record it appears that there are two types of hand cameras. One type uses glass plates or films cut to the size of the glass plate, and the other type, which is by far the more popular, uses films in rolls. The merchandise in the instant case is used in the first type of camera, which employs either glass plates or film packs. Where a glass plate is used it is necessary to use a plate holder in order to protect the glass plate from improper exposure to light. If, however, the film is used in such a camera, it is cut into pieces the size of the glass plate and is inserted in the film pack just as are those involved herein. In placing the film cut to size in the film pack, pieces of opaque paper are placed between the films, with protruding tabs arranged in such manner that after each exposure a new film may be brought into place by pulling out and tearing off successive tabs from one to twelve. With a camera of this type, either a glass plate with a plate holder or a film pack with a film pack adaptor must be used. Without one or the other the camera will not function as a camera.

The court there held that the film packs in question were properly dutiable as parts of photographic cameras (paragraph 1551, Tariff Act of 1930) rather than as manufactures of metal (paragraph 397). In so holding, this court cited with approval the holding in *Steel, Inc.* v. *United States, supra,* wherein our appellate court at page 426 said:

The more serious of appellant's contentions is that it is optional, according to the testimony, for the user of a grinding mill to use steel balls such as are here involved or an imported hard rock, and that therefore steel balls are not indispensable to the operation of the grinding mill. We have given this matter consideration and conclude that the mere fact that two articles each serving the same purpose may be optionally used for the completion of a machine does not prevent each of said articles from being a part of a machine. * * * *It is sufficient to say that, in order for an article to be a part of a machine, it is not necessary that there be no substitute for such article.* [Italics supplied.]

Likewise, in the present case the imported Helm "camera" or special device, which contains a film holder especially adapted for this particular X-ray work, is used in this particular kind of X-ray apparatus for the purpose for which the apparatus was designed, namely, to take in rapid succession X-ray pictures or photofluorograms. In the ordinary X-ray apparatus designed to take large X-ray pictures, a holder with a film is inserted in the table under the patient to produce a picture. In the type of X-ray apparatus used to produce pictures known as photofluorograms, this imported Helm "camera" containing the film is used, and it is so used in place of the plate or film holder which is ordinarily employed. Without it, the photofluorographic X-ray apparatus would not function for the purpose for which it was intended. We, therefore, find upon the record that this Helm camera is a part of an X-ray apparatus known and described as a photofluorographic unit, using photofluorographic special film in a photofluorographic camera and producing a picture known as a photofluorogram.

We thus have an imported article which is a photographic camera and also is a part of X-ray apparatus, both provided for in the paragraphs of the Tariff Act of 1930 as hereinbefore described. There but remains a determination as to which of these provisions is the more specific and therefore controlling.

Plaintiff directs our attention to *United States* v. *Herman H. Sticht & Co.,* 22 C. C. P. A. (Customs) 40, T. D. 47048, wherein the merchandise consisted of indicators to be attached to the transmitter of a radio-telegraph apparatus to indicate to the operator the potential capacity of the transmitter, in terms of words per minute, at the speed at which the transmitter was being operated at a given instant. It appeared that the device in question was rotated by the same motor which operated the transmitter, being geared to said motor, and that the speed of rotation of the pendulum of the said device was directly proportional to the speed of the motor and that, consequently, it gave a

relative indication of the speed of the shaft of the motor. Our appellate court held the articles properly dutiable under paragraph 353 of the Tariff Act of 1930 as parts of an electric telegraph apparatus or parts of a radio apparatus, rather than under paragraph 368 of the act as a "mechanism, device, or instrument intended or suitable for  *  *  * indicating  *  *  * the speed of arbors,  *  *  * or similar uses."

In so holding, the court stated (p. 44):

* * * that when Congress provided *eo nomine* for telegraph and radio apparatus, and for parts thereof, in said paragraph 353, it intended that all such should be dutiable thereunder, unless more specifically described elsewhere in the tariff act.

The court therein held that the articles in question were more specifically described as parts of electrical telegraph or radio apparatus under paragraph 353 than under the *general descriptive language* of paragraph 368, *supra*. In the present case, however, paragraph 1551 under which the imported camera was classified does not contain general descriptive language. The Helm camera, although a part of an X-ray apparatus (paragraph 353), is more specifically described elsewhere in the tariff act, namely, paragraph 1551, under the provision for "photographic cameras" and is dutiable, therefore, under the more specific provision.

In *United States* v. *Carl Zeiss, Inc.*, 24 C. C. P. A. (Customs) 145, T. D. 48624, certain "finders" for photographic cameras were held "parts" of cameras, as claimed, and classifiable as such under paragraph 1551, Tariff Act of 1930, and not as "optical instruments" under paragraph 228 (b), as assessed. The "finders" were designed to be used with lenses other than the lenses originally upon the cameras, and in order that the cameras could properly function as such, finders had to be used which were adapted to the particular lens employed, each of the lenses covering a different field.

In so holding, the court stated, page 148:

* * * *If the photographic lenses for which the finders were designed were imported separately, it seems clear that they would in fact be parts of cameras, although more specifically provided for as photographic lenses* under paragraph 228 (b) and dutiable thereunder. This being true, and it being established that a camera fitted with such lenses could not be properly operated without the use of a finder designed to be used in conjunction with such lens, it seems obvious that such finders should likewise be held to be *parts* of cameras. See *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T. D. 34249. [Italics supplied.]

At page 149:

Finally, appellant contends that, even though the articles here involved be parts of cameras, they are more specifically provided for in said paragraph 228 (b) as "photographic or projection lenses," and are therefore dutiable thereunder. * * *

*If the finders * * * are in fact photographic or projection lenses, then this contention of appellant is correct.* [Italics supplied.]

In *Decorated Metal Manufacturing Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 140, T. D. 40061, the merchandise consisted of certain typewriter ribbon spools which had been classified as parts of typewriters.and admitted free of duty under paragraph 1542, Tariff Act of 1922, for parts of typewriters. The appellant, an American manufacturer, claimed the articles were properly dutiable under paragraph 399 of the act for manufactures of iron or steel. The court found in the first instance that the metal ribbon spools were parts of the typewriters, without which the machines were incapable of performing their ordinary functions. In holding the articles free of duty as parts of typewriters, as classified, rather than as manufactures of iron or steel, as claimed, the court stated:

· * * * It is not infrequent for separate parts of machines to bear particular names of their own, without ceasing to be regarded as parts of the completed machines. In such instances the specific names would of course prevail over the general ones if they appeared in competition in a given tariff provision, but in the absence of a specific enumeration the article would be governed by the next most applicable provision to which it would respond. In the present case for example *if the tariff act contained a specific enumeration of ribbon spools or typewriter ribbon spools, as well as that for parts of typewriters, the former would of course control.* [Italics supplied.]

The Tariff Act of 1930 contains a specific provision for "photographic cameras" (paragraph 1551) as well as for parts of X-ray apparatus (paragraph 353). Applying the above reasoning to the case before us, we hold that the imported Helm camera which is specifically enumerated in paragraph 1551 of the act is dutiable under such paragraph, as assessed, rather than under the provision contained in paragraph 353 of the act for "parts" of an X-ray apparatus, as claimed.

The defendant alternatively contends that the protest should be overruled, without affirming the classification of the collector, upon the ground that the imported "Helm camera" is properly dutiable at the rate of 17½ per centum 'ad valorem under the provision in paragraph 353 of the tariff act, as modified by the General Agreement on Tariffs and Trade (T. D. 51802), for therapeutic (including diagnostic) instruments, wholly or in chief value of metal, not specially provided for. We find no merit in this contention.

Webster's New International Dictionary, 1948 edition, page 2621, defines "therapeutic" as follows:

*Med.* Of or pertaining to the healing art; concerned with remedies for diseases; curative.

The imported article possesses no curative or therapeutic properties. Its primary function is as part of an X-ray apparatus to produce as a permanent record for future observation and study a picture of a shadow image which is projected on a fluorescent screen through

the medium of X-rays directed upon the body of a person, by use of which picture a certain malignant condition, if present, may be detected. As originally enacted, paragraph 353, Tariff Act of 1930, did not extend the provision for "therapeutic instruments" contained therein to include "diagnostic instruments," as has been done by the General Agreement on Tariffs and Trade, T. D. 51802, under which modification the defendant alternatively claims. Under section 350 (a) of the Tariff Act of 1930, as amended (T. D. 47117), the President is authorized "(1) To enter into foreign trade agreements * * *" and "(2) To proclaim such modifications of existing duties and other import restrictions * * *." He may not, however, reclassify an article for duty purposes by removing it from one paragraph in the tariff act and providing for it in another paragraph of the act, or by enlarging the operation of any designated tariff paragraph so as to make it include merchandise not originally covered thereby. *Abercrombie & Fitch* v. *United States,* 9 Cust. Ct. 336, C. D. 709. Consequently, only such diagnostic instruments as fall within the meaning of the term "therapeutic instruments" are covered by paragraph 353 of the act, as amended, for "therapeutic (including diagnostic) * * * instruments." The imported article, not being a therapeutic instrument, is not classifiable under the provision contained in paragraph 353, as amended, for "therapeutic (including diagnostic) * * * instruments." The defendant's claim in this respect is overruled.

For the foregoing reasons and following the cited authorities, we hold the imported merchandise is properly dutiable at the rate of 20 per centum ad valorem, under paragraph 1551 of the Tariff Act of 1930, as a photographic camera, as assessed. The protest claim herein is overruled. Judgment will issue accordingly.

### DISSENTING OPINION

Cole, Judge: The merchandise in question, the Helm camera, in its imported condition, is not susceptible of use. To serve the purpose for which it is specially designed and peculiarly adapted, the mechanism must be connected, electrically and mechanically, with the X-ray apparatus of which it is a part. It cannot be said, therefore, that at the time of importation the article was a photographic camera. On the contrary, the record is conclusive in showing that the mechanism, by its construction, was dedicated to use as part of an X-ray apparatus.

Usefulness of this Helm camera is limited to the field of radiology, a branch of medicine using X-rays and radium in the diagnosis and treatment of disease. It is employed in photofluorographic work, particularly with an X-ray unit for diagnosing cancer of the stomach.

The function of the camera is to record on film of high sensitivity a shadowgraph of the stomach, from the image cast on a fluorescent screen through X-rays directed on the anatomical region under examination.

Exclusive use of the mechanism, in the manner just outlined, as part of an X-ray apparatus, being the sole purpose for its manufacture, brings the merchandise squarely within the provision for parts of X-ray apparatus in paragraph 353 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, as claimed by plaintiff.

This is so clear and decisive of the issue herein, I feel constrained to dissent from the majority views. I would sustain the protest.

The case was heard and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254). As I have previously stated in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, I feel that such cases are properly for the individual trial judge to decide, and beyond the jurisdiction of the division. But such view continues as the minority expression of this division, and as much litigation before the division is dependent upon my participation in a decision of the same, I am, for the purpose of expediting the work of the court, participating in this matter by this dissenting opinion.