BEFORE THE FIRST DIVISION, JUNE 5, 1961

No. 65745.—Fairchild Camera & Instrument Corp. and Inter-Maritime Forwarding Co., Inc. *v.* United States, protest 319849–K (New York).

OLIVER, Chief Judge:  This protest relates to certain merchandise that was assessed with duty at the rate of 20 per centum ad valorem under the provision in paragraph 1551 of the Tariff Act of 1930 for photographic cameras.

Plaintiffs make several claims.  All of them invoke paragraph 353 of the Tariff Act of 1930, which, as originally enacted, reads as follows:

PAR.  353.  All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;
electrical telegraph (including printing and typewriting), telephone, signaling, radio, welding, ignition, wiring, therapeutic, and X-ray apparatus, instruments (other than laboratory), and devices; and
articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;
all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

Plaintiffs' principal claim is that the present merchandise is properly classifiable under the provision in paragraph 353, as modified by T.D. 54108, for parts of electrical X-ray apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for (except X-ray tubes, carrying a dutiable rate of 8¼ per centum ad valorem.  Alternative claims are made for classification under the provision for parts of articles suitable for producing, rectifying, controlling, or distributing electrical energy in paragraph 353, as modified by T.D. 51802, with a duty assessment at the rate of 15 per centum ad valorem; or under paragraph 353, as modified by T.D. 52739, as parts of articles having as an essential feature an electrical element or device, finished or unfinished, wholly or in chief value of metal, and not specially provided for, carrying a dutiable rate of 13¾ per centum; or under paragraph 353, as modified by T.D. 54108, as parts of electrical

therapeutic (including diagnostic) apparatus, instruments (other than laboratory), and devices, composed wholly or in chief value of metal, and not specially provided for, with a dutiable rate of 16½ per centum ad valorem.

All of the evidence adduced herein was offered by plaintiffs. The sole witness was a sales engineer employed in the medical department of the industrial camera division of the Fairchild Camera & Instrument Corp., a manufacturer of "aerial cameras, electronic devices, and allied lines." (R. 4.) The witness' testimony supports the following description and function of the present merchandise.

The articles in question are cameras, concededly composed in chief value of metal. Pictorial illustrations thereof were received in evidence (plaintiffs' illustrative exhibit 1). One of them is described as "Model X–70S In-Line Super Speed Fairchild-Odelca Photofluorographic Camera," and the other is designated as "Model X–70SA Angle-Hood Super Speed Fairchild-Odelca Photofluorographic Camera." Although these cameras were imported as separate units, they cannot be used, in the condition as imported, to take a photograph or picture of anything. Both cameras are used for the same purpose. They function as cameras only after they have been combined with X-ray equipment (plaintiffs' illustrative exhibit 2), which is standard X-ray apparatus, to form a complete photofluorographic unit. When these cameras are connected with a photofluorographic unit, they become an integral part thereof. The X-ray apparatus will not function properly without a camera, such as the articles in question, and these cameras must be connected with the X-ray apparatus to be useful. In other words, without a camera, like the present merchandise, the photofluorographic unit cannot function, in its exclusive use for taking X-ray pictures of the chest. The photofluorographic unit is used in hospitals, by health departments, by the National Tuberculosis Association, and with mass chest survey units. It is never used in laboratories.

In operation, the patient is positioned between the camera and the X-ray equipment. The technician, after regulating the voltage, presses a button, and the photofluorographic unit does its work. These cameras, when they are attached to, or connected with, the X-ray apparatus, are equipped with certain devices that control their operation. Interlocking switches prevent double exposures. A phototimer circuit allows proper exposure, which is automatically terminated. These cameras do not take a picture of an object or a scene, as in the case with the usual photographic camera, and they cannot take any picture until a fluorescent screen (not an imported item) is inserted and the X-ray equipment is installed. When the X-ray apparatus is in operation, the X-rays penetrate the body of the patient and the interior chest condition is projected on the fluorescent screen in the form of a shadow graph, which is photographed on sensitized photofluorographic film, that "has to be a very, very, rapid emulsion corrected to the color of the screen, either blue or green." (R. 22.) A roll of the film, 100 feet long, will take approximately 450 pictures. The film used in the cameras under consideration, unlike that used in the ordinary camera, is always exposed, but the interior of the camera is lightproof. Instead of the usual shutter arrangement, to permit the entrance of light, the action of the X-rays on the fluorescent screen provides the illumination that permits the picture to be made.

The witness admitted that, "basically," there is no difference between the Fairchild-Odelca photofluorographic cameras in question and the Helm camera, which was the subject of our decision in *Westinghouse Electric International Co.*

v. *United States*, 28 Cust. Ct. 209, C.D. 1411. Counsel for plaintiffs, expressing agreement with the witness' testimony, state, in their brief, as follows:

It is clear from the facts of record that the merchandise here is the same in all material respects as that which was involved in the case of *Westinghouse Electric International Co.* v. *United States*, 28 Cust. Ct. 209, C.D. 1411. In fact plaintiff's witness in the present case testified that the imported Odelca photofluorographic apparatus was basically the same as the Helm 70 millimeter photofluorographic apparatus which merchandise was subject of the *Westinghouse Electric*, case, *supra*.

The Helm camera involved in the cited case was used for taking X-ray pictures to determine the presence of stomach cancer, and, like the cameras involved in the present case, was designed for use with, and usable only when permanently affixed to, X-ray apparatus to take X-ray photofluorograms.

The *Westinghouse* case presented issues identical with those before us in the present case. In the cited case, we held that the Helm camera was a photographic camera and that it was also a part of an X-ray apparatus, and concluded that it was more specifically provided for under the provision for "photographic cameras" in paragraph 1551. Accordingly, the collector's classification of the merchandise was sustained.

Counsel for plaintiffs, recognizing the controlling influence of the *Westinghouse* case, *supra*, state, in their brief, as follows:

Under the doctrine of *stare decisis* the *Westinghouse International* case, *supra*, would normally be decisive of the issues involved herein since both the facts and issues are the same in all material respects. Plaintiff believes, however, that the issue of relative specificity of the paragraphs involved, upon which the decision of the court turned, should properly be reviewed in the light of more recent decisions of both the Court of Customs and Patent Appeals and the Customs Court. It is contended by the plaintiff here, that these decisions, which will be referred to hereinafter, require a holding that the provision for parts of X-ray apparatus not specially provided for, in Paragraph 353 is more specific than the provision for photographic cameras not specially provided for in Par. 1551 and that the conclusion of the majority of the court in the *Westinghouse Electric* case, insofar as it relates to relative specificity, was incorrect.

To support plaintiffs' contention, as embodied in the foregoing quotation, *M.B.I. Export & Import, Ltd., et al.* v. *United States*, 39 Cust. Ct. 363, Abstract 61046, and *United States* v. *Lansen-Naeve Corp.*, 44 C.C.P.A. (Customs) 31, C.A.D. 632, are cited. In the *M.B.I. Export & Import, Ltd.*, case, certain merchandise, which had been assessed by the collector as microscopes, was held to be properly classifiable as parts of jig-boring machines, as claimed, under "the general rule that a use provision prevails over a descriptive or an *eo nomine* provision." The *Lansen-Naeve Corp.* case involved certain ground and polished cylindrical steel rolls that were classified under the provision in paragraph 344 of the Tariff Act of 1930 for cylindrical steel rolls, ground and polished, valued at 25 cents per pound or more, and containing more than two-tenths of 1 per centum of chromium. The merchandise was claimed to be properly classifiable as parts of machine tools, not specially provided for. The collector's classification of the merchandise was sustained on application of the rule of statutory construction that a "not specially provided for" clause in a use provision excludes therefrom articles enumerated elsewhere by descriptive or *eo nomine* designation. That principle is not a consideration in determination of the issues presented herein.

In this case, plaintiffs claim that the provision for "photographic cameras," invoked by the collector, is an *eo nomine* designation, and that the provision for "electrical X-ray apparatus," claimed to be applicable herein, is based on use, and that, therefore, under the well-established principle of specificity that a provision predicated on use prevails over a descriptive or *eo nomine* provision, unless there is a clearly expressed congressional intent to the contrary, the

classification as parts of electrical X-ray apparatus should apply to the present merchandise.

. The competing provisions in the present issue will not meet the test urged by plaintiffs. In a comparatively recent decision, the Court of Customs of Patent Appeals, discussing an issue that involved provisions in paragraph 353, as modified, for electrical therapeutic apparatus, and electrical X-ray apparatus, stated that the "provision for electrical X-ray apparatus in paragraph 353" is an *eo nomine* designation, *E. Dillingham, Inc., et al.* v. *United States*, 48 C.C.P.A. (Customs) 46, C.A.D. 762. Similarly, in the earlier decision of *United States* v. *Herman H. Sticht & Co.*, 22 C.C.P.A. (Customs) 40, T.D. 47048, the appellate court held that the provision in paragraph 353, covering electric telegraph and radio apparatus, and which also includes X-ray apparatus, is an *eo nomine* provision. Under the cited authorities, plaintiffs' contention, based on the premise that the provision for X-ray apparatus is predicated on use, is without merit, and needs no further discussion herein.

On the basis of the present record and for all of the reasons hereinabove set forth, we find and hold that the issues before us are controlled entirely by our decision in the *Westinghouse* case, *supra*. Accordingly, we incorporate herein by reference the reasoning followed in the cited case, and hold that the merchandise in question is properly dutiable at the rate of 20 per centum ad valorem under paragraph 1551 of the Tariff Act of 1930 as photographic cameras, as assessed.

Consideration has been given to all of the cases cited in the briefs of counsel for the respective parties. Reference herein has been made only to those cases deemed necessary to support the conclusion reached.

The protest is overruled, and judgment will be rendered accordingly.