(C.D. 2486)

FAIRCHILD CAMERA & INSTRUMENT CORP.
INTER-MARITIME FORWARDING CO., INC. } v. UNITED STATES

United States Customs Court, First Division

(Decided October 26, 1964)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Earl R. Lidstrom* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before OLIVER, WILSON, and FORD, Judges ; FORD, J., dissenting

OLIVER, Chief Judge: This protest involves certain merchandise that was assessed with duty at the rate of 20 per centum ad valorem under the provision in paragraph 1551 of the Tariff Act of 1930 for photographic cameras. Plaintiffs' principal claim, and the one to which all of plaintiffs' proof is directed and upon which counsel's argument is based, is for duty at the rate of 8¼ per centum ad valorem under the provision in paragraph 353 of the Tariff Act of 1930, as modified by T.D. 54108, for parts of electrical X-ray apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for (except X-ray tubes). We find nothing herein to warrant discussion of any of plaintiffs' alternative claims, all of which relate to different provisions of paragraph 353 of the Tariff Act of 1930, as modified. No further reference will be made thereto.

At the opening of the trial, counsel for plaintiffs stated that "The merchandise involved in this case is the same as merchandise that was involved previously before this Court, the decision of which was reported in Abstract 65745 [*Fairchild Camera & Instrument Corp. et al.* v. *United States*, 46 Cust. Ct. 518, Abstract 65745]. At that time the Court overruled the protest, and held that the imported merchandise was properly dutiable as a camera, under Paragraph 1551." (R. 3.) The record in the cited case, hereinafter referred to as the previous case, was incorporated herein on motion by counsel for plaintiffs and without objection from counsel for defendant.

Plaintiffs' evidence in the previous case was summarized in our decision, Abstract 65745, *supra*, as follows:

"All of the evidence adduced herein was offered by plaintiffs. The sole witness was a sales engineer employed in the medical department of the industrial camera division of the Fairchild Camera & Instrument Corp., a manufacturer of 'aerial cameras, electronic devices, and

allied lines.' (R. 4.) The witness' testimony supports the following description and function of the present merchandise.

"The articles in question are cameras, concededly composed in chief value of metal. Pictorial illustrations thereof were received in evidence (plaintiffs' illustrative exhibit 1). One of them is described as 'Model X–70S In-Line Super Speed Fairchild-Odelca Photofluorographic Camera,' and the other is designated as 'Model X–70SA Angle-Hood Super Speed Fairchild-Odelca Photofluorographic Camera.' Although these cameras were imported as separate units, they cannot be used, in the condition as imported, to take a photograph or picture of anything. Both cameras are used for the same purpose. They function as cameras only after they have been combined with X-ray equipment (plaintiffs' illustrative exhibit 2), which is standard X-ray apparatus, to form a complete photofluorographic unit. When these cameras are connected with a photofluorographic unit, they become an integral part thereof. The X-ray apparatus will not function properly without a camera, such as the articles in question, and these cameras must be connected with the X-ray apparatus to be useful. In other words, without a camera, like the present merchandise, the photofluorographic unit cannot function, in its exclusive use for taking X-ray pictures of the chest. The photofluorographic unit is used in hospitals, by health departments, by the National Tuberculosis Association, and with mass chest survey units. It is never used in laboratories.

"In operation, the patient is positioned between the camera and the X-ray equipment. The technician, after regulating the voltage, presses a button, and the photofluorographic unit does its work. These cameras, when they are attached to, or connected with, the X-ray apparatus, are equipped with certain devices that control their operation. Interlocking switches prevent double exposures. A phototimer circuit allows proper exposure, which is automatically terminated. These cameras do not take a picture of an object or a scene, as in the case with the usual photographic camera, and they cannot take any picture until a fluorescent screen (not an imported item) is inserted and the X-ray equipment is installed. When the X-ray apparatus is in operation, the X-rays penetrate the body of the patient and the interior chest condition is projected on the fluorescent screen in the form of a shadow graph, which is photographed on sensitized photofluorographic film, that 'has to be a very, very, rapid emulsion corrected to the color of the screen, either blue or green.' (R. 22.) A roll of the film, 100 feet long, will take approximately 450 pictures. The film used in the cameras under consideration, unlike that used in the ordinary camera, is always exposed, but the interior of the camera

is lightproof. Instead of the usual shutter arrangement, to permit the entrance of light, the action of the X-rays on the fluorescent screen provides the illumination that permits the picture to be made."

In the previous case, plaintiffs claimed that the provision for "photographic cameras" in paragraph 1551, *supra*, is an *eo nomine* designation, and that the provision for "electrical X-ray apparatus" in paragraph 353, as modified, *supra*, is predicated on the use of merchandise, and that, therefore, under the tariff principle that a "use" provision prevails over a descriptive or *eo nomine* provision, classification of the merchandise as parts of electrical X-ray apparatus should apply. Under judicial authorities, *E. Dillingham, Inc., et al.* v. *United States*, 48 CCPA 46, C.A.D. 762, and *United States* v. *Herman H. Sticht & Co.*, 22 CCPA 40, T.D. 47048, which held adversely to plaintiffs' contention, the protest in the previous case was overruled.

In the present case, which involves the identical issue as that presented in the previous case, plaintiffs contend that the merchandise under consideration is "more than a camera" and is properly classifiable as part of X-ray apparatus. Counsel's brief states plaintiffs' position as follows (p. 9):

The instant litigation was prepared and is presented to this Court for determination upon the premise that relevant facts about the Odelca unit and issues were not previously called to the Court's attention or urged for decision. These matters are now presented by the additional record. No attack is made upon the "finding" that the merchandise is a "part of X-ray" apparatus or on the judicial determination of relative specificity. Therefore, it is proper to review the issues presented here for determination on the status of the merchandise as a "camera". Succinctly stated it is plaintiff's position that the imported merchandise is *more than a camera* and therefore can not properly be classified under Par. 1551, *supra*. This issue has not been considered heretofore by this Court. [Italics quoted.]

The term "more than," which plaintiffs seek to have applied to support their claim herein, is frequently used in judicial construction of tariff statutory language in distinguishing between an imported commodity and articles that are *eo nomine* designated in the statute. The principle was applied in *United States* v. *The A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794. There, the merchandise consisted of essential components of an electric motor, together with two gear assemblies and a metal frame; the entire unit being the principal component of an electrical floor polisher. The court found that while the imported commodity contained the essential elements of a motor, it also included features not essential to its function as a motor, and, therefore, held it to be more than a motor, removed from classification as such, and, being part of an electrical floor polisher, was properly classifiable under the provision in paragraph 353, as modified, for parts of an article having as an essential feature an electrical element or device.

Attempting to invoke the same rule of statutory construction in the present case, with respect to the instant merchandise, plaintiffs called as a witness, the manager of the customer service of the Fairchild Camera & Instrument Corp., the same employer of the witness who appeared in the previous case. The witness' testimony in the present case is an attempt to show that the imported merchandise includes several items of a photographic unit, consisting of a camera portion—selective lens system, aperture, film handling mechanism, known as a cassette—and other accessories, identified as a hood, distribution panel, phototimer, safety monitor, and sequence selector, which are not parts of the camera. Such testimony is not convincing in the light of the incorporated record, wherein plaintiffs' witness, a sales engineer in the industrial camera division of the Fairchild Camera & Instrument Corp., stated that the merchandise consists of cameras, complete with certain safety devices that were imported with and formed part of the cameras. Pertinent testimony in the incorported record is as follows (R. 13 in protest 319849–K) :

CHIEF JUDGE OLIVER: * * * What is this merchandise that we have on Illustrative Exhibit 1?

THE WITNESS: That is this camera here.

CHIEF JUDGE OLIVER: It is a camera?

THE WITNESS: Yes.

CHIEF JUDGE OLIVER: Both of them are cameras, one straight and one angle?

THE WITNESS: That is right.

CHIEF JUDGE OLIVER: In other words, that is the camera, and you sell it to X-ray manufacturers, whom I presume incorporate it in their apparatus when they resell it?

THE WITNESS: Yes.

CHIEF JUDGE OLIVER: Have you seen it so incorporated and seen it so used?

THE WITNESS: I have.

JUDGE WILSON: Have you seen it assembled in anything except X-ray merchandise?

THE WITNESS: No, it can't be designed for anything else. That is all it could be used for.

In further testimony in the incorporated record, the witness stated that the imported commodities, in their condition as imported, are cameras (plaintiffs' exhibit 1 in protest 319849–K), consisting of an optical system, a hood, safety devices, safety monitor, phototimer, and magazine for transporting the film, and that the X-ray apparatus, with which the imported cameras are combined, comprises a rectifier, transformer, tube, carrying equipment for it, and control stand.

The witness, who appeared in the previous case, admitted that "basically," there is no difference between the Fairchild-Odelca photo-

fluorographic cameras in question and the Helm camera, which was the subject of our decision in *Westinghouse Electric International Co.* v. *United States*, 28 Cust. Ct. 209, C.D. 1411. There, as here, the merchandise was assessed under the provision for photographic cameras and claimed to be dutiable as parts of X-ray apparatus. The Helm camera involved in the *Westinghouse* case, *supra*, was used for taking X-ray pictures to determine the presence of stomach cancer and, like the cameras involved in the present case, was designed for use with, and usable only when permanently affixed to, X-ray apparatus to take X-ray photofluorograms. Our conclusion in the previous case, Abstract 65745, *supra*, holding the merchandise to be classifiable as photographic cameras, followed the reasoning employed in the *Westinghouse* case, *supra*.

In the light of the previous litigation hereinabove discussed, including plaintiffs' evidence in the incorporated record involving cameras concededly the same as those now before us, plaintiffs' testimony in the present case is not sufficient to disturb the factual findings and the legal conclusions set forth in our decision in the previous case. Accordingly, we find and hold that the articles in question are specially designed photographic cameras, equipped with certain essential components that are imported with the cameras, enabling them to perform their exclusive function of taking X-ray pictures or photofluorograms, in a particular, or special, field of radiology. It follows, therefore, that the premise upon which plaintiffs stress their claim, that the merchandise is "more than a camera" will not apply.

On the basis of the combined records and for the reasons hereinabove set forth, as well as those set forth in our decision in the previous case, Abstract 65745, *supra*, which are incorporated herein by reference, we hold the merchandise in question to be properly dutiable at the rate of 20 per centum ad valorem under paragraph 1551 of the Tariff Act of 1930, as photographic cameras, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.

### DISSENTING OPINION

FORD, Judge: This court in the case of *Westinghouse Electric International Co.* v. *United States*, 28 Cust. Ct. 209, C.D. 1411, had before it for consideration an item known as a Helm Photofluorographic Camera. The witness in the incorporated case, *Fairchild Camera & Instrument Corp. et al.* v. *United States*, 46 Cust. Ct. 518, Abstract 65745, stated there was basically no difference between the so-called instant camera and the Helm camera. In the course of its decision, the court in the *Westinghouse* case, *supra*, found the Helm camera to be part of the X-ray apparatus and made the following statement:

* * * Neither the X-ray generating unit nor the imported camera can function as a complete unit without the other. "Each is dependent upon the other, and neither will perform its proper function unless used together." The article before us will not perform its function as a camera until and unless it is used as part of the X-ray apparatus.

* * * * * * *

* * * We, therefore, find upon the record that this Helm camera is a part of an X-ray apparatus known and described as a photofluorographic unit, using photofluorographic special film in a photofluorographic camera and producing a picture known as a photofluorogram.

The court, however, also held the imported merchandise to be a camera and concluded that the provision for photographic cameras was more specific than the provision for parts of X-rays. The court, accordingly, held the merchandise involved therein to be properly subject to classification under the provision for photographic cameras, under the provisions of paragraph 1551 of the Tariff Act of 1930.

Based upon the combined records, I am of the opinion and agree with the foregoing quotation from the *Westinghouse* case, *supra*, that the imported article cannot function unless it is used as part of the X-ray apparatus. In the dissenting opinion by Judge Cole in the *Westinghouse* case, *supra*, the question as to whether or not the imported article was a photographic camera was posed and the following statement from the dissenting opinion was made:

The merchandise in question, the Helm camera, in its imported condition, is not susceptible of use. To serve the purpose for which it is specially designed and peculiarly adapted, the mechanism must be connected, electrically and mechanically, with the X-ray apparatus of which it is a part. It cannot be said, therefore, that at the time of importation the article was a photographic camera. On the contrary, the record is conclusive in showing that the mechanism, by its construction, was dedicated to use as part of an X-ray apparatus.

There appears to be no question that in the incorporated *Fairchild* case, *supra*, the decision was also based upon the theory that the provision for photographic cameras was more specific than parts of X-rays. Similarly, in the majority opinion herein, the court has followed the same theory.

I am of the opinion, based upon the previous decision in the *Westinghouse* case, *supra*, and upon the principles set forth in the case of *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602, that the imported articles are parts of X-ray apparatus. Notwithstanding the position taken by plaintiffs herein that the imported merchandise is "more than" a camera, I am of the opinion that the imported article is less than a photographic camera since in its condition as imported, it cannot function as a camera, to wit, the taking of a photograph. The term "camera" is defined in "Photo-Lab-Index," published by Morgan & Morgan, Inc., as follows:

camera: A photographic instrument for taking pictures consisting of a means for holding a sensitive film, a lighttight box, and a lens.

Similarly, the Webster's New International Dictionary, second edition, unabridged, 1949, gives the following definition:

camera * * * 2. * * * b A closed box or similar chamber through the aperture of which the image of an object is recorded on a light-sensitive material. * * *

That there are specialized cameras for special purposes is clearly evident in the case of *United States* v. *Carl Zeiss, Inc.*, 27 CCPA 12, C.A.D. 54, involving retinal cameras and in the case of *United States* v. *E. Leitz, Inc.*, 24 CCPA 139, T.D. 48622, which involved cameras for photo-micrographing metal. These cases and the specialized cameras involved therein are, however, distinguishable from the merchandise at bar. While the imported merchandise is designed for a special purpose, it cannot function as a camera until it is joined with the X-ray unit whereas the cameras involved in the *Zeiss* and *Leitz* cases, *supra*, are in fact cameras which can function as such even though only for a specific specialized use.

The combined records clearly establish that in its condition as imported, or in its condition as sold to X-ray manufacturers with the fluorescent screen attached, the merchandise at bar could not function as a camera, unless and until it is connected both physically and electrically to the X-ray machine, since the image photographed by this so-called camera is created by the X-rays exciting the fluorescent screen and forming an image thereon.

Since the imported article cannot operate as a photographic camera prior to connection with the X-ray, it obviously is not a photographic camera within the common meaning of said term and, accordingly, should not in my opinion be classified under paragraph 1551 of the Tariff Act of 1930.

The record does satisfactorily establish that said merchandise is an integral part of X-ray equipment and as indicated by the decision in the *Westinghouse* case, *supra*, neither the X-ray nor the camera apparatus can function without the other. The joining creates a new article which is a diagnostic X-ray machine. It is obvious that a diagnostic X-ray machine must produce some form of record from which the doctor would be able to make his diagnosis. This record may be in the form of a photograph, whether the 70 mm. type involved herein, the large plate type of radiogram or radiograph, or a temporary picture such as is made on a fluoroscopic type of X-ray machine.

I would, therefore, sustain the protest and hold the imported merchandise to be properly subject to classification as parts of electrical X-ray apparatus under the provisions of paragraph 353 of the Tariff Act of 1930, as modified, *supra*.