FAIRCHILD CAMERA & INSTRUMENT CORP., INTER-MARITIME FORWARDING CO., INC. *v.* UNITED STATES (No. 5196)*

United States Court of Customs and Patent Appeals, July 21, 1966

*Barnes, Richardson & Colburn* (*E. Thomas Honey*, of counsel) for appellants. *John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *James S. O'Kelly*, *Charles P. Deem* for the United States.

[Oral argument April 6, 1966 by Mr. Honey and Mr. Deem]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Associate Judges

RICH, Acting Chief Judge, delivered the opinion of the court: This appeal is from the judgment of the United States Customs Court, First Division (C.D. 2486),[1] overruling appellants protest to the classification of Fairchild-Odelca photofluorographic cameras, models X–70S and X–70SA together with certain items of auxiliary equipment.

---

*C.A.D. 887.
[1] 53 Cust. Ct. 141.

The collector classified the imports under paragraph 1551, Tariff Act of 1930, and claim is made under paragraph 353 as modified. The statutes are:

Paragraph 1551 provides in pertinent part, as follows:

> Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem * * *

Paragraph 353, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade (T.D. 54108), provides, in relevant part, as follows:

> Electrical X-ray apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for (except X-ray tubes) _____ 8¼% ad. val.
> Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 in this Part:
>
>   *      *      *      *      *      *      *
> Other _____ The same rate of duty as the articles of which they are parts.

Appellant made several alternative claims under paragraph 353 at various rates of duty but argues only that classification bearing the lowest, 8¼% ad valorem, duty.

This is a retrial of the issue in a former case, from which no appeal was taken, *Fairchild Camera & Instrument Corp., Inter-Maritime Forwarding Co., Inc.* v. *United States*, 46 Cust. Ct. 518, Abstract 65745, involving the same merchandise, decided June 5, 1961, the record of which is incorporated herein. In that case a unanimous Customs Court overruled the protest and held paragraph 1551 to be the proper classification. There the court also found that another camera known as the Helm 70 mm. photofluorographic camera was basically the same as the merchandise here at bar, the Helm camera having been found to be properly classified as "photographic cameras" under paragraph 1551 in *Westinghouse Electric International Co.* v. *United States*, 28 Cust. Ct. 209, C.D. 1411. The court applied the doctrine of stare decisis.

In the prior *Fairchild* case it was found that the imports were both photographic cameras and parts of X-ray apparatus. Appellant argued that the latter was a "use" provision and should prevail. The court rejected that contention, found the provisions for cameras and for X-ray apparatus both to be *eo nomine* and held the photographic camera provision to be the more specific.

In this retrial appellant proceeded on another legal theory and took the testimony of one new witness to support it. The theory this time was that the imports are "more than" cameras and reliance is placed

on our decision in *United States* v. *The A. W. Fenton Co., Inc.,* 49 CCPA 45, C.A.D. 794. That case involved the major portion of the mechanism of electric floor polishers (Hoover), classified as electric motors. We found them to be much more than motors and sustained the protest.

It is seen, therefore, that merchandise such as that at bar has three times been adjudicated to be "photographic cameras" by the lower court, including the decision below in this case. However, the debatable nature of the issue is indicated by the dissent of Judge Cole in the *Westinghouse* case and the dissent of Judge Ford in the present case. While we favor the application of stare decisis, we have carefully reviewed the merits of the controversy and have concluded that the previous decisions have been correct. We are further of the view that this case does not resemble the *Fenton* case in its facts sufficiently to reverse on the basis that the imported camera equipment is "more than" a camera.

The imported cameras, which we shall refer to as "Odelca" cameras, are well described in sales literature in evidence and by witnesses associated with Fairchild, which acts as their distributor. They are consistently described in the exhibits as cameras and the witnesses admitted they are cameras. They are special purpose cameras for use in a kind of X-ray system known as photofluorography, developed in large part for the purpose of making mass chest X-ray surveys.

In taking "X-rays," which are really shadowgraphs produced *by* X-rays passing through an object onto a surface capable of rendering them visible, it has commonly been the practice either to capture the picture on a large photosensitive plate or sheet of film, as large as the area examined, or to let the X-rays impinge on a screen of material which fluoresces when struck by X-rays and on which the shadowgraph could be seen if the screen be viewed in a darkened room. The disadvantage of the large film in making permanent records is readily appreciated. The Odelca camera makes possible a photographic record of a large area, such as a human chest, on a relatively small film only 70 mm. wide. This film can be in long continuous rolls and over 400 pictures may be made on a 100 foot roll. Pictures of this kind are made by inserting inside the front end or hood of the camera, at the focus of the optical system, a fluorescent screen 16 x 16 inches or so in size. The patient stands close against the end of the hood and is subjected to X-rays which penetrate his body and strike the screen, producing a transitory picture inside the camera. A special optical system known as a "Bouwers concentric mirror" system translates the screen image onto a film plane in reduced size, the reduction factor being 6.4 : 1 and the image size being 62 x 62 mm.

The X-70S Odelca camera has a straight line optical system and an elongated hood coaxial with it. Total length is 53.7″. The X-70SA

("A" is for angle) has an angle hood in which is a 45° mirror which bends the light rays from the screen to the film at a 90° angle, for convenience in certain types of installations. Both cameras weigh 160 pounds. There are various types of film cassettes, or holders, for single-shot and various lengths of film rolls, hand operated or motor driven. There is auxiliary equipment imported with the cameras including a "K panel" which is a kind of junction box for making electrical interconnections between X-ray apparatus and various camera components by means of cables, plugs and jacks, a "safety monitor" which prevents double exposures and also minimizes the patient's exposure to X-rays, and a card-holder which is electrically tied in with the film transport and the optical system in such manner as to prevent picturetaking unless a new patient's card is inserted and which records the card on the picture for identification. These are relied on by appellant to support its "more than" argument as is also the hood.

It is contended that the hood is not part of the camera but we are not persuaded that this is so. By the definitions of "camera" on which appellant relies, a camera must have a light-tight box and the hood performs the function of providing one. Without it, the film would be exposed to daylight. As to the other accessories, we agree with the Government and the lower court that they are essential components of the cameras enabling them to perform their intended function of taking photofluorographic pictures. Appellant also refers to a photocell device located in the hood which apparently controls exposure and regulates a patient's exposure to X-rays. Whatever it does, it is irrelevant because it is not imported. As to the fluorescent screen positioned at the end of the hood, that too is not imported but is added to the camera in this country.

Appelant emphasizes much of this equipment as "X-ray apparatus" but in fact it is all part of *photo*flurographic apparatus, as the expert testimony amply shows. The imports are the photo, or camera, portion sold in this country to manufacturers of complete X-ray outfits.

In classifying the imports as photographic cameras it is not important that they are not adapted to general picture taking but are special-purpose cameras designed to photograph but one particular object. *United States* v. *Carl Zeiss, Inc.*, 27 CCPA 12, C.A.D. 54.

Exhibit 1 was introduced in the incorporated case. It is an 8-page, 8½ x 11 inch illustrated brochure on both the straight line and angular cameras subtitled "the new 70mm Photofluorographic Camera." It illustrates some of the accessories such as the safety monitor and the card holder appellant relies on, both featured and shown as attached to the camera. The following testimony in the incorporated case by appellant's sole expert witness, an employee of Fairchild, was quoted

in the opinion of the lower court and we think it is sufficiently significant to quote it here: .

Chief Judge Oliver: * * * What is this merchandise that we have on Illustrative Exhibit 1?

The Witness: That is this camera here.

Chief Judge Oliver: It is a camera?

The Witness: Yes.

Chief Judge Oliver: Both of them are cameras, one straight and one angle?

The Witness: That is right.

Chief Judge Oliver: In other words, that is the camera, and you sell it to X-ray manufacturers, whom I presume incorporate it in their apparatus when they resell it?

The Witness: Yes.

In the second trial a new expert witness, also from Fairchild, tried to limit the "camera" to only a part of the device which Fairchild sells as a camera and so describes in its literature. We think the attempt was unsuccessful.

We see no reason to disturb the three consistent determinations of the Customs Court that this and similar photographic equipment is properly classified under the camera provision of paragraph 1551 and the judgment below is therefore *affirmed*.