**J. E. BERNARD & CO., Inc.**

**v.**

**UNITED STATES.**

C.D. 2872; Protest Nos. 63/3353–13302, etc.

United States Customs Court,
Second Division.
Jan. 19, 1967.

Wallace & Schwartz and Schwartz & Lidstrom, Chicago, Ill. (Barnes, Richardson & Colburn, New York City, Earl R. Lidstrom, and Joseph Schwartz, Chicago, Ill., of counsel), for plaintiff.

Barefoot Sanders, Asst. Atty. Gen. (Andrew P. Vance and Harold L. Grossman, trial attys., New York City), for defendant.

Before RAO, Chief Judge, FORD, Judge, and DONLON, Senior Judge.

DONLON, Judge:

Certain hearing aids and parts thereof, exported variously from Austria, Denmark, and Switzerland, were imported by plaintiff, a customs broker, at Chicago for the account of Fidelity Electronics, Ltd. As to two entries, importation was directly by Fidelity Electronics, Ltd. The several importations extend from July 12, 1961, to November 26, 1962. All of the entries at bar were liquidated as entered, between April 25, 1962, and April 24, 1963.

Five protests are before us, consolidated for purposes of trial. The protests run to that part only of the entered merchandise which is described in the protests as hearing aids and which was charged in liquidation with duty under paragraph 353, either at the rate of 15 per centum or at the rate of 13½ per centum ad valorem, according to entry date. The claim is that merchandise, so described, should be charged under the same paragraph, but with modified duty rates as recited in the several protests.

There is some confusion, both in the descriptive material of the entry documents and in the protests. However, counsel on trial and in their briefs agree that the issue, under all five protests, is whether the articles at bar are electrical *therapeutic* apparatus, instruments or devices, or parts thereof, as classified. If they are, then the applicable duty rate, as to articles entered prior to July 1, 1962, is 15 per centum; as to such articles entered on or after July 1, 1962, the duty rate is 13½ per centum.

If the articles at bar are not electrical *therapeutic* apparatus, instruments or devices, or parts thereof (and plaintiff contends that they are not), then plaintiff's claim is that they are properly to be classified as articles having as

an essential feature an electrical element or device, dutiable (according to entry date) at 13¾ per centum or at 12½ per centum.

We turn to the proofs adduced by plaintiff in support of its claim. It is admitted that the hearing aids, of which the imported articles are parts, do have an electrical element as an essential feature. The question, then, is whether the hearing aids are or are not *therapeutic*, in a tariff sense.

The competing tariff provisions are as follows:

Paragraph 353, as enacted in the Tariff Act of 1930—

All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy;

electrical telegraph (including printing and typewriting), telephone, signaling, radio, welding, ignition, wiring, therapeutic, and X-ray apparatus, instruments (other than laboratory), and devices; and

articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;

all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

Paragraph 353, as modified by T.D. 54108, effective June 30, 1958—

Electrical therapeutic (including diagnostic) apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for * * * ....15% ad val.

Paragraph 353, as modified by T.D. 52739, effective June 6, 1951—

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, re-

frigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \*

Other (except \* \* \*)..13¾% ad val.

Paragraph 353, as modified by T.D. 55816, effective July 1, 1962—

Electrical apparatus, instruments (other than laboratory), and devices, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \*

Therapeutic (including diagnostic), and parts thereof........13½% ad val.

\* \* \* \* \* \*

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, all the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \*

Other (except \* \* \*)....12½% ad val.

We have the benefit of four briefs filed by counsel. In addition to their principal briefs, plaintiff's counsel filed a reply brief and defendant's counsel a sur-reply brief.

In its principal brief plaintiff argues, on the basis of dictionary definitions, that "therapeutic" devices are limited to such as have healing or curative qualities, and that hearing aids do not heal or cure deafness. Plaintiff cites two cases, and only two, in support of the proposition that some curative or healing qualities in the treatment of deafness are essential in order to bring a hearing aid within the scope of the tariff enumeration for therapeutic devices. Westinghouse Electric International Co. v. United States, 28 Cust.Ct. 209, C.D. 1411; and Biddle Sawyer Corp. v. United States, 50 CCPA 85,

C.A.D. 826. We discuss these cases later.

The argument in defendant's principal brief likewise cites dictionary definitions, and particularly those definitions which include the alleviative as being among the qualities that characterize therapeutic devices or instruments. Defendant cites and discusses Teutonophone (Inc.) v. United States, 63 Treas.Dec. 402, T.D. 46223.

Defendant's citation of the *Teutonophone* case moved plaintiff to seek leave, by reply brief, to argue against the aptness of that case as precedent; and defendant, in a sur-reply brief, reargued the holding in *Teutonophone* as applicable to the facts of the instant case.

■ The record before us is clear, and it is supported by a common knowledge which judges share, that hearing aids, such as those for which the articles at bar are parts, are not intended to and do not heal deafness, nor do such aids cure deafness. There is no such contention here by any one; and if that were the whole of the tariff meaning of the term "therapeutic," as read in paragraph 353, plaintiff would have made its case.

Defendant, however, takes the view that therapeutic devices and instruments include also those, medically used, which alleviate disease. The record before us shows, by competent testimony, that the hearing aids at bar are prescribed by physicians to alleviate deafness.

In Westinghouse Electric International Co. v. United States, supra, cited by plaintiff, the issue was whether a camera designed for use with X-ray apparatus was dutiable, as it had been classified in liquidation, as a camera or, as the protest claimed, as a part of X-ray apparatus. The majority of the First Division held that the camera was more specifically provided for under the *eo nomine* enumeration for cameras, than as part of X-ray apparatus. Defendant argued alternatively that, even though classified in liquidation as a camera, the camera at bar properly was dutiable as a therapeutic (including diagnostic) instrument.

As to this contention of defendant, the majority said:

* * * We find no merit in this contention.

Webster's New International Dictionary, 1948 edition, page 2621, defines "therapeutic" as follows:

*Med.* Of or pertaining to the healing art; concerned with remedies for diseases; curative.

The imported article possesses no curative or therapeutic properties. Its primary function is as part of an X-ray apparatus to produce as a permanent record for future observation and study a picture of a shadow image which is projected on a fluorescent screen through the medium of X-rays directed upon the body of a person, by use of which picture a certain malignant condition, if present, may be detected. As originally enacted, paragraph 353, Tariff Act of 1930, did not extend the provision for "therapeutic instruments" contained therein to include "diagnostic instruments," as has been done by the General Agreement on Tariffs and Trade, T.D. 51802, under which modification the defendant alternatively claims. Under section 350(a) of the Tariff Act of 1930, as amended (T.D. 47117), the President is authorized "(1) To enter into foreign trade agreements * * *" and "(2) To proclaim such modifications of existing duties and other import restrictions * * *." He may not, however, reclassify an article for duty purposes by removing it from one paragraph in the tariff act and providing for it in another paragraph of the act, or by enlarging the operation of any designated tariff paragraph so as to make it include merchandise not originally covered thereby. Abercrombie & Fitch v. United States, 9 Cust.Ct. 336, C.D. 709. Consequently, only such diagnostic instruments as fall within the meaning of the term "therapeutic instruments" are covered by paragraph 353 of the act, as amended, for "therapeutic (including diagnostic) * * * instruments." The imported article,

not being a therapeutic instrument, is not classifiable under the provision contained in paragraph 353, as amended, for "therapeutic (including diagnostic) * * * instruments." The defendant's claim in this respect is overruled.

We have no quarrel with the decision that the camera of the *Westinghouse* case was not shown to be a therapeutic instrument. The camera did not heal or cure, nor did it alleviate any condition of human disease.

As to that part of the opinion language, cited supra, to the effect that the General Agreement on Tariffs and Trade could not modify paragraph 353 by associating diagnostic instruments with therapeutic instruments, we express no view and need not do so, for there is no contention here that hearing aids are in any sense diagnostic instruments. The issue is solely whether they are therapeutic instruments.

In *Biddle Sawyer*, supra, the other case on which plaintiff relies in its principal brief as authority for the interpretation of "therapeutic" instruments as being limited to those which heal or cure, the issue litigated was whether a certain chemical should be classified as a "medicinal" preparation. Our appeals court said:

Three cases decided by this court * * * all indicate that "medicinal" includes only those substances which possess therapeutic properties. United States v. Wm. Cooper & Nephews, Inc., * * * [22 CCPA 31, T.D. 47038]; Van Gelder-Fanto Corp. v. United States, 41 CCPA 90, C.A.D. 534; E. F. Drew & Co. v. United States, 41 CCPA 101, C.A.D. 536. [P. 93.]

In an explanatory footnote on the same page, the court said:

The term "therapeutic" is defined in Webster's Third New International Dictionary and Funk & Wagnalls' New Standard Dictionary, respectively, as follows:

therapeutic * * *: of or relating to the treatment of disease or

disorders by remedial agents or methods: CURATIVE, MEDICINAL * * *

* * * * * *

therapeutic, * * * 1. Having healing qualities; curative; *alleviative*. * * * [Emphasis supplied.]

* * * * * *

The case of *Teutonophone*, supra, is in point. There hearing devices for the deaf, using an electric battery, were held classifiable under paragraph 353 on the ground, stated by the court in its opinion, that they were *therapeutic* apparatus or devices which Congress had provided for, *eo nomine*, in that paragraph.

Plaintiff attempts to argue away the relevance of the *Teutonophone* decision, asserting that the finding that the *Teutonophone* hearing aids were therapeutic devices is *obiter dicta*. We see no reason to infer that this finding is *dictum*. Therapeutic devices, having an electrical element as an essential feature, are *eo nomine* enumerated in paragraph 353. The court, on the record before it, found that the devices there at bar were within that enumeration. They did not find, as plaintiff seems to say, that the *Teutonophone* hearing aids were some kind of electrical device other than a therapeutic device. To read the opinion of the court as plaintiff argues, is to twist plain language into meaningless jargon.

We regard the *Teutonophone* decision as *stare decisis*.

■ Apart from that decision, and if this case were before us as an issue of novel impression, we would reach the same result here as the court there did. While the term "therapeutic" as it is used in paragraph 353 has seldom come before the courts, there is a considerable body of precedent defining the tariff term "therapeutic". That is a term which had long been construed to limit the enumeration for medicinal preparations in paragraph 5. Without discussing these cases *in extenso*, it suffices to say that it is well established law that

the tariff enumeration for medicinal preparations requires that such preparation shall have therapeutic qualities, and that therapeutic qualities embrace the alleviative or palliative, as well as the curative or healing qualities. Sandoz Chemical Works, Inc. v. United States, 43 CCPA 152, C.A.D. 623; United States v. Alltransport, Inc., 44 CCPA 149, C.A.D. 653.

These cases cite Dodge & Olcott v. United States, C.C., 130 F. 624. In *Alltransport* our appeals court quoted from the *Dodge & Olcott* opinion, in part as follows:

* * * As to the precise meaning of the word "medicinal" * * * I will assume—that it confines the noun with which it is coupled to something which is of use, or believed by the prescriber or user fairly and honestly to be of use, in curing or *alleviating*, or *palliating* or preventing, some disease or affection of the human frame. [*Alltransport*, supra, at p. 152; emphasis added.]

Webster's New International Dictionary, 2d edition (1956), defines alleviate and palliate, the verbs from which the adjectives alleviative and palliative are derived, as follows:

alleviate * * * To lighten or lessen (physical or mental troubles); to mitigate, or make easier to be endured * * *.

palliate * * * to mitigate; to ease without curing; as, to *palliate* a disease.

■ The record before us supports our finding that the hearing aids or devices, of which the articles at bar are parts, are prescribed and used to ease the disease or affection of deafness, to make it easier to be endured, without curing it. They are therapeutic devices having an electrical element as an essential part.

The protests are overruled. Judgment will be entered accordingly.

FORD, J., concurs.

RAO, Chief Judge (dissenting).

I am constrained to disagree with the decision of the majority in this case for the reason that I am of opinion that there is no support in judicial precedent or in common meaning for the proposition that a device which compensates for the effects of an impaired physical condition, without in any way remedying that condition, is therapeutic. The cases cited by the majority do not support this conclusion and, in reality, suggest to me that a therapeutic device must be curative in some degree to come within the ambit of the provision therefor in paragraph 353 of the Tariff Act of 1930.

The case of Teutonophone Inc. v. United States, 63 Treas.Dec. 402, T.D. 46223, sheds no light on the meaning of the word "therapeutic." It was there held that hearing aids were properly classifiable in paragraph 353 of the Tariff Act of 1930 as opposed to paragraph 372. Only an oblique, conclusory reference was made to hearing aids as therapeutic devices, indicating that the major concern of the court was in distinguishing between the provision for machines in paragraph 372 and the provision for electrical articles or devices in paragraph 353 rather than in coming to any reasoned conclusion as to the scope of the term "therapeutic" in said paragraph 353.

The majority states that "therapeutic" includes alleviative in the sense of making a condition easier to endure without tending to cure it, and cites, in support of this proposition a number of cases on classification of "medicinal preparations" within the purview of paragraph 5 of the Tariff Act of 1930. These cases have a certain relevance since, in order to decide whether certain articles are medicinal preparations, the courts have held that it is first necessary to determine whether they possess therapeutic properties. Contrary to the opinion of the majority, however, it is my view that these cases do not suggest, much less establish, that therapeutic qualities embrace the alleviative as above defined.

In United States v. Alltransport, Inc., 44 CCPA 149, C.A.D. 653, the Court of Customs and Patent Appeals held that certain gelatin sponges were medicinal preparations, precisely because they were therapeutic in the sense of being curative, in that they provided a chemical hemostatic action helpful in stemming the flow of blood during surgery and in aiding coagulation. No consideration was given to any article which did not tend to cure or heal. Consequently no rule including such articles as therapeutic can be derived from that case.

In Sandoz Chemical Works, Inc. v. United States, 43 CCPA 152, C.A.D. 623, the court held that a drug used for diagnostic purposes was a medicinal preparation. This decision did not tamper with the "therapeutic" criterion for medicinal preparations but rather added a separate criterion of diagnostic use. Neither in its facts nor in its reasoning does this decision, in any manner, suggest that the word therapeutic includes anything which does not tend to cure.

In Biddle Sawyer Corp. v. United States, 50 CCPA 85, C.A.D. 826, a pharmaceutical grade of polyvinyl pyrrolidone, a chemical compound used as a binder for the active medicament in the manufacture of pills, was held not to be a medicinal preparation because it had no therapeutic properties of its own. The unavoidable import of this decision is that therapeutic properties are properties which tend to cure. The court stated that " * * * in order for imported compounds to be classified as medicinal preparations 'under paragraph 5' they must possess, in and of themselves, therapeutic properties used in the treatment and cure of bodily disorders." The majority here, by supplying emphasis to the word "alleviative" appearing in a Funk & Wagnalls definition of "therapeutic" used in a footnote to clarify the above-quoted sentence, cannot thus transform the entire purport of *Biddle* to suggest that a noncurative article is therapeutic.

It is no answer to the present question to seize on the word "alleviative" wher-

ever it appears and claim that it can mean making the effect of a disease or physical disability bearable without tending to cure it. This *can* be the meaning of alleviative but any use of this word in the above cases suggests the contrary. It seems always to be employed as a synonym for curative in the application of a "therapeutic" criterion to medicinal preparations. As such, it supports the view that devices which do not tend to cure are not therapeutic.

To date, with the exception of the oblique reference in *Teutonophone*, supra, no device which does not in some manner tend to effect a cure or aid in diagnosis has been considered therapeutic, and no substance which is neither curative nor diagnostic has been found to be a medicinal preparation.

Some further light on the meaning of "therapeutic" may be obtained from United States v. 23⁷⁄₁₂ Dozen Bottles, etc., of an Article of Drugs, etc., D.C., 44 F.2d 831 (1930), wherein the court found that a certain drug preparation was not misbranded under section 10 of the Food and Drug Act of 1906, 34 Stat. 771 for containing a "[f]alse statement of curative or therapeutic effect," since it did have a therapeutic effect on "croup, coughs, colds, and snuffles." In its informative decision, the court stated that, while the preparation at issue was not an absolute cure, it did tend to aid nature in overcoming the disease and was, therefore, possessed of therapeutic qualities. Thus, in one of the few cases in which a meaning of the word "therapeutic" in a statute has been in issue,

and the subject of critical examination, it has been considered to mean curative or tending to cure.

The dictionary definitions of therapeutic, set forth at length in the opposing briefs, support the view that a therapeutic device must tend to cure. For example, the definition in Webster's Third New International Dictionary (1963) reads as follows:

> therapeutic * * *: of or relating to the treatment of disease or disorders by remedial agents or methods: CURATIVE, MEDICINAL * * *.

I do not find persuasive defendant's approach which proceeds from the above definition to find that "remedial" means affording a remedy; that "remedy" has to do with the alleviation of disease; that "alleviate" means to make easier to be endured and concludes from all this that "therapeutic" means or includes the noncurative. I prefer to rely on the principal definitions, which conform to the meaning I have obtained from the available decisions, and which are reached without semantic gymnastics.

For the above reasons I conclude that the instant hearing aids, which, concededly, do not in any manner tend to cure the bodily condition of defective hearing but merely alleviate some of its effects, cannot be classified as therapeutic devices as that term is commonly understood. They should properly be classified as articles having as an essential feature an electrical element or device within the provisions of paragraph 353 of the Tariff Act of 1930, as modified, at the claimed rate.