The Honorable Don Sallee State Senator, First District R.R. #2 Troy, Kansas 66087
Dear Senator Sallee:
As senator for the first district you inquire about several rules and regulations promulgated by the Kansas dental board. Specifically you inquire whether K.A.R. 71-1-16; 71-1-17 and 71-3-3 contradict or expand the provisions of K.S.A. 65-1423.
K.S.A. 65-1423 exempts certain categories of individuals, such as physicians and surgeons, from the dental practice act's scope. Subsection (g) of the statute exempts unlicensed individuals who perform dental services under the supervision and in the office of a licensed dentist so long as they do not perform the following:
 "(1) Any and all removal of or addition to the hard or soft tissue of the oral cavity.
 "(2) Any and all diagnosis of or prescription for treatment for disease, pain, deformity, deficiency, injury or physical condition of the human teeth or jaws, or adjacent structure.
 "(3) Any and all correction of malformation of teeth or of the jaws.
 "(4) any and all administration of general or local anaesthesia of any nature in connection with a dental operation.
"(5) A prophylaxis." K.S.A. 65-1423(g).
Briefly, the regulations in question interpret the statutory prohibitions quoted above and effect the board's interpretation. Specifically, K.A.R. 71-1-16 interprets each of the first four prohibitions above (1) through (4). We will address only the board's interpretation of number 4 dealing with anaesthesia. K.A.R. 71-1-17
effects the interpretation by addressing what a dentist may delegate to a nonlicensed dental assistant in light of the board's interpretation of the statutory prohibition. The third regulation K.A.R. 71-3-3 deals with what operations a dental hygienist may perform. As a licensed person under the act, a dental hygienist is not subject to the above prohibitions (that apply to nonlicensed assistants) and for this reason the third regulation is analyzed separately.
Our question is whether the interpretation adopted by the Kansas dental board is consistent with the prohibitions in the statute or whether the interpretation exceeds the authority delegated to the Kansas dental board by the legislature.
K.A.R. 71-1-16 states in pertinent part:
 "`General or local anaesthesia of any nature in connection with a dental operation' means any general anaesthetic and local anaesthetic whether block or infiltration. The term shall not include the administration and monitoring of the analgesic use of nitrous oxide/oxygen."
By thus defining anaesthesia, the board has, as a practical matter, exempted the administration of nitrous oxide/oxygen from the prohibition found in subsection (g) quoted above. Putting the board's exemption into effect, K.A.R. 71-1-17 states:
 "Nitrous Oxide/Oxygen; unlicensed assistant. A dentist may utilize an assistant not licensed by the Kansas dental board in the administration and monitoring of nitrous oxide/oxygen if such person has satisfactorily completed a course of instruction in such functions approved by the dental board."
In order to be valid, the administrative rules and regulations in question must be within the authority conferred upon the board. 1 Am.Jur.2d Administrative Law sec. 70 (1962). The Kansas dental board (hereinafter board) promulgated these regulations pursuant to K.S.A.74-1406 which authorizes the board "to adopt rules and regulations to carry out and make effective the provisions of this act, and to modify or repeal said rule and regulations whenever in the discretion of the board it is deemed necessary." Thus the rules in question must "carry out and make effective the provisions of the act" in order to be valid. In other words, any rule which is broader or oversteps the boundaries of a statute by extending or restricting the statute contrary to its meaning is void. 2 Am.Jur.2d Administrative Law sec. 300 (1962); Pork Motel, Corp. v.Kansas Depart. of Health Environment, 234 Kan. 374, 378 (1983).
The provisions of the act thus set the standard, policy or limitation that must be adhered to by the board. 2 Am.Jur.2d Administration Law
sec. 300 (1962). Subsection (g) of K.S.A. 65-1423 sets the standard that no unlicensed individual may administer any local or general anaesthesia. At issue is whether the analgesic use of nitrous oxide/oxygen qualifies as a local or general anaesthesia. The board, using the members' discretion as experts in the field, found that it did not and promulgated K.A.R. 71-1-16 and K.S.A. 71-1-17. Our office approved this regulation as to legality pursuant to K.S.A. 77-420, giving deference to the board's technical discretion as an agency of special competence and experience. 1 Am.Jur.2d Administrative Law sec. 676 (1962). See e.g. Kansas Power and Light Co. v. Kansas CorporationCommission, 237 Kan. 394, 397 (1985). Under the operative construction doctrine great weight is given to the interpretation of a statute by the administrative body charged with enforcing the statute. Kansas Bd. ofRgents v. Pittsburg State Univ. Chap. of K-NEA, 801, 809 (1983), citing with approval 2 Am.Jur.2d Administrative Law, sec. 677 (1962).
As the subject of an attorney general opinion a regulation is however subject to a higher standard of review. And while the administrative interpretation of a statute is to be given consideration and effect, the final construction is a question of law that rests with the courts.National Gypsum Co. v. Kansas Employment Security Board of Review,244 Kan. 678 (1989). The statutory language prohibiting "any and all" administration of general or local anaesthesia does not define the terms and thus creates ambiguity. In order to find whether the board has exceeded its authority we must reconsider the regulation's legality using established rules of statutory construction. The fundamental rule of statutory construction, to which all others are subordinate, is that the intent of the legislature governs when the intent can be ascertained from the statute and the act as a whole. Cyr v. Cyr, 249 Kan. 94 (1991).
When determining legislative intent, identical words in different statutes on a similar subject are interpreted to have the same meaning in the absence of an indication from the context that a different meaning was intended. Martindale v. Tenny, 250 Kan. 621, 630 (1992). The terms local and general anaesthesia are defined in K.S.A. 65-1151 regulating registered nurse anaesthetists, a similar subject. For purposes of this act, the legislature defines "local anesthetic" [sic] as "infiltration anesthesia or anesthesia produced by direct infiltration of local anesthetic solution into the operative site". "General anesthesia" is defined as "one that is complete and affecting the entire body with the loss of consciousness." The board's definition is consistent with these definitions, given that the dental professionals disagree as to whether nitrous oxide/oxygen is an anaesthesia. While nitrous oxide/oxygen isgenerally considered an anaesthetic, it is considered by some to be more specifically a sedative since it does not produce any loss of consciousness, nor does it numb any portion of the body for purposes of any dental operation. As an inhalation analgesia it produces a state of sedation. Holroyd, S., Clinical Pharmacology in Dental Practice, 4th ed. (1988), p. 415. See Malamed S., Sedation: A Guide to PatientManagement, 2d Ed. (1989), p. 156. (Experts in this area disagree whether the analgesic use of nitrous oxide is an analgesia or an anaesthesia.)See Pleasants J., "The Case Against Relative Analgesia," 15 DentalClinics of North America, 839 (Oct. 1971). See generally Langa "Analgesia for Modern Dentistry", New York Journal of Dentistry, v. 26, pp. 228-237 and pp. 265-277 (1957). A perusal of the dental act gives us no indication that the legislature intended the terms local and general anaesthesia have a different meaning from that found in the legislature's definition of these terms in the registered nurse anaesthetists' act.
Legislative intent can sometimes be drawn from legislative action. And while it is proper to consider contemporary action of the legislature when determining the meaning of a statute, no legislative intent may be drawn by its failure to act. 72 Am.Jur.2d Statutes sec. 169 (1974). The substance of the regulations in question was considered by the 1992 legislative session in 1992 House Bill No. 3126. The bill passed the house of representatives 77 to 46 (1992 House Journal 2073) and was later incorporated into 1992 Senate Bill No. 343 that also passed both houses. Senate Bill No. 343 was however vetoed by the governor with no chance for a veto override and did not become law. Because we have no means of knowing the reasons that influenced the rejection, it is improper to draw any presumption or legislative intent from the non-enactment of this legislation. See 73 Am.Jur.2d Statutes sec. 172 (1974).
For the reasons discussed above it is our judgment that the board, as the administrative agency charged with carrying out and making effective the provisions of the act, has not exceeded its statutory authority by promulgating K.A.R. 71-1-16 and 71-1-17. As a board with technical expertise, the board has not contradicted or expanded K.S.A. 65-1423.
The third regulation, K.A.R. 71-3-3, was promulgated under different statutory authority and thus is analyzed separately. The regulation states:
 "71-3-3. Authorized dental hygienist duties. In addition to the duties specifically mentioned in the Kansas dental code, . . . (c) administer local (block and infiltration) anaesthesia and nitrous oxide. The administration of local anaesthesia shall be performed only under the direct supervision of a licensed dentist at the office of the licensed dentist. Such dental hygienist shall have completed courses of instruction in local anaesthesia and nitrous oxide which have been approved by the board."
The regulation authorizes a dental hygienist to administer local anaesthesia and nitrous oxide under a dentist's direct supervision and only after receiving approved training. Promulgated pursuant to K.S.A.65-1456 the regulation adds to the educational preventive and therapeutic procedures that a licensed dental hygienist may perform. The statute authorizes the board to establish additional procedures. The statute states:
 "The practice of dental hygiene shall include those educational, preventive, and therapeutic procedures which result in the removal of extraneous deposits, stains and debris from the teeth and the rendering of smooth surfaces of the teeth to the depths of the gingival sulci. Included among those educational, preventive and therapeutic procedures are the instruction of the patient as to daily personal care, . . . and such additional educational, preventive and therapeutic procedures as the board may establish by rules and regulations."
At issue is whether the regulation involves therapeutic procedures within the board's authority described above. The term "therapeutic" is susceptible of more than one meaning. See Certified Blood DonorServices, Inc. v. U.S., 377 F. Supp. 964, 967 (1974). When construing a statute, words should be construed according to context and given their ordinary meaning. State, ex rel. Stephan v. Kansas RacingComm'n, 246 Kan. 708 (1990). The term therapeutic may pertain to the healing arts generally or more specifically to something with qualities of curative and healing as well as palliative and alleviative. It makes sense that in context the word therapeutic is narrowly describing something which is healing or alleviative. See J.E. Bernard Co. v.U.S., 262 F. Supp. 434, 438 (1967). In our judgment K.S.A. 65-1456
authorizes the board the discretion to promulgate K.A.R. 71-3-3. We note that K.S.A. 65-1422 (defining who is engaged in the practice of dentistry as one who "administers an anaesthetic of any nature in connection with a dental operation") and K.S.A. 65-1444 (wherein the legislature gives a dentist the right to prescribe drugs, perform surgery and administer general or local anaesthetics) are not contrary to our conclusion regarding dental hygienists. Had the legislature intended to preclude dental hygienists from administering a local anaesthesia they might have made subsection (g) applicable to any dental assistant, licensed or unlicensed. The legislature did not.
Your second question regarding who may practice dentistry is encompassed in our analysis to your first question. Your third question is whether the regulations jeopardize the public health of Kansas residents. The board is charged with the enforcement of the act regulating dentists and dental hygienists, K.S.A. 74-1404. The rule-making power of the board is restricted by law apart from K.S.A.74-1406 that confers power to the board; the board cannot effectuate or make a rule that clearly offends legislative objective. Tew v. TopekaPolice Fire Civ. Service Comm'n, 237 Kan. 97, 100 (1985) (agency regulations are for the benefit of the agency and the public). The wisdom of the board's use of discretion as experts and as an administrative agency is not a question of law. For this reason we have addressed only the power to promulgate those regulations. See 2 Am.Jur.2d Administrative Law sec. 677 (power to make an order and not its wisdom is a question for the courts). 1 Am.Jur.2d Administrative Law § 72 (1962).
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Guen Easley Assistant Attorney General
RTS:JLM:GE:jm