**BURROUGHS CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 78–7–01362.**

United States Court of International Trade.

April 15, 1987.

Rode & Qualey, John S. Rode and William J. Maloney, New York City, for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Su-

san Handler-Menahem, New York City, for defendant.

DiCARLO, Judge:

Plaintiff challenges the United States Customs Service (Customs) classification of merchandise invoiced as electronic desk calculators Styles C6451 and C6453 (the C Series Calculators), transaction recorders models TR 101, TR 101–1, TR 102–3, TR 102–6 and transaction terminals Models TT 102–3, TT 102–4, TT 102–6, TT 142–3, and TT 142–4 (the TR/TT Series Machines) as accounting, computing and other data processing machines incorporating a calculating mechanism under item 676.15 of the Tariff Schedules of the United States (TSUS) dutiable at 5.5% ad valorem. The Court has jurisdiction under 28 U.S.C. § 1581(a) (1982). The action is dismissed.

## Discussion

Plaintiff contends the articles do not incorporate a "calculating mechanism" and are properly classified under item 676.30, TSUS, as office machines not specially provided for and dutiable at 5% ad valorem. Alternatively, plaintiff asserts that if the Court finds the merchandise does incorporate a calculating mechanism then the proper classification of the C Series Calculators is under item 676.20, TSUS, as calculating machines specially constructed for multiplying and dividing dutiable at 5% ad valorem and the TR/TT Series Machines is under 676.22, TSUS, as cash registers dutiable at 5% ad valorem. Defendant contends that if the merchandise is found to incorporate a calculating mechanism, but is found not to be properly classified under item 676.15, TSUS, then it should be classified under item 676.25, TSUS, dutiable at 5.5% ad valorem.

## Calculating Mechanism

The first issue before the Court is whether the subject merchandise incorporates a "calculating mechanism" as that phrase is defined in Schedule 6, Part 4, Subpart G, Headnote 2(b), TSUS:

A "calculating mechanism" is one designed to perform one or more of the four arithmetical operations, i.e., addition, subtraction, multiplication, and division.

Plaintiff concedes that the merchandise is capable of performing one or more of the four arithmetical operations but says that such calculations are not performed by a "mechanism" as that term has been defined for purposes of interpreting the TSUS by the court in *Texas Instruments Inc. v. United States*, 82 Cust.Ct. 272, C.D. 4810, 475 F.Supp. 1183 (1979), *aff'd*, 67 CCPA 59, C.A.D. 1244, 620 F.2d 269 (1980).

The phrase "calculating mechanism" as a whole has never been judicially interpreted. This phrase as used in the TSUS has no direct counterpart in the Tariff Act of 1930 from which the TSUS evolved. The principal legislative history of the TSUS, the *Tariff Classification Study* prepared by the United States Tariff Commission, indicates that all of Subpart G of the TSUS was derived from paragraphs 353 and 372 of the Tariff Act of 1930, which do not contain any reference to this phrase. *See* 8 *Tariff Classification Study*, 253, 254, 273, 274, 280, 288, 289 (1960).

The term "mechanism," however, has been defined in what the Court considers authoritative and controlling precedent. In *Texas Instruments*, the court considered the proper classification of integrated circuits imported for incorporation and use in solid-state electronic digital watches. Customs classified the integrated circuits in the provision in Schedule 7, Part 2, Subpart E for "other assemblies and sub-assemblies for watch movements," item 720.75, TSUS. The appellate court affirmed the decision of the trial court which had determined that the articles in question were neither assemblies nor sub-assemblies for watch movements within the meaning of Schedule 7, Part 2, Subpart E, Headnote 2(b), nor assemblies nor sub-assemblies for clock movements as defined in Schedule 7, Part 2, Subpart E, Headnote 2(c).

More specifically, the Court of Customs and Patent Appeals defined the term "mechanism" as used in the TSUS when reaching its determination on the government's alternative claim for classification:

# 510

## (5) *Clock Movement*

The Government argues that if the articles are not classifiable as watch movements they are classifiable as "clock movements or mechanisms" under TSUS item 720.86, because schedule 7, part 2, subpart E, headnote 2(c), says for the purpose of subpart E: "The term 'clock movements' means any movement or mechanism, other than 'watch movements' as defined in headnote 2(b), above, intended or suitable for measuring time." That language, says the Government, requires that any timekeeping device not meeting the dimensional and physical requirements of "watch movement" be classified as a "clock movement or mechanism."

That argument turns on the meaning of "mechanism" at the time the TSUS were enacted. That meaning is of a breadth insufficient to encompass a solid-state module having no moving parts. Webster's Third New International Dictionary (1961) defines mechanism as "a piece of machinery: a structure of working parts functioning together to produce an effect," with machine defined as "(a)ny device consisting of two or more * * * parts, which * * * may serve to transmit and modify force and motion * * *." That that meaning has long been accepted is evidence by Lockwood's Dictionary of Mechanical Engineering Terms (1913), defining mechanism as "an assemblage of parts * * * which embraces the essential principles on which the machine is constructed," and "machine" "an assemblage of parts * * * by which motion and force are transmitted."

The integrated circuit before us is not a sub-assembly of a mechanism for the same reason it is not a sub-assembly of a movement: there is simply no physical movement or motion generated in or by the circuit.

*Texas Instruments*, 67 CCPA at 64, 620 F.2d at 272.

Defendant argues that the definition of mechanism rendered by the court in *Texas Instruments* is not controlling in the present action. According to defendant, *Texas Instruments* "bears no relevance to this action as the relevant factors and Congressional intent are different in this case" as *Texas Instruments* "concerned the definition of a different term in the context of a different industry and under a different state of facts as to the existence of the merchandise at the time of the enactment of the Tariff Schedules."

It is true that the court in *Texas Instruments* was concerned with a different industry, but its definition of mechanism involves the TSUS as a whole. The *Texas Instruments* Court stated at the outset that the government's alternative argument "turns on the meaning of 'mechanism' at the time the TSUS were enacted" and went on to discuss generic definitions of mechanism existing at the time of that enactment. 67 CCPA at 64, 620 F.2d at 272.

Defendant argues that Congress was aware of the emergence of computers at the time of enactment of the TSUS and must have had a meaning in mind for mechanism that would encompass such technology. As previously noted, the phrase "calculating mechanism" was created with passage of the TSUS and no congressional intent as to the meaning of the term mechanism is evident in the definition of that phrase provided in Schedule 6, Part 4, Subpart G, Headnote 2(b), TSUS, quoted above. In view of the controlling definition of mechanism rendered in *Texas Instruments*, this Court declines to engage in speculation regarding alleged congressional intent contrary to such definition.

Relying upon the definition, plaintiff argues that the subject merchandise does not incorporate a calculating mechanism because all arithmetic computations take place completely within the Arithmetic Logic Unit (ALU), which does not contain moving parts. Plaintiff supports this position by testimony of its witnesses at trial indicating that only the electronic components of the ALU make the calculations.

Plaintiff's application of the definition of mechanism determined in *Texas Instruments* is too narrow. In that case, the only article before the court was the solid-state

integrated circuit. Defining mechanism as a "structure of working parts functioning together to produce an effect," the court reasoned that by itself this circuit could not be an assembly or sub-assembly of a watch/clock movement or mechanism because it had no moving parts. *Texas Instruments*, 67 CCPA at 64, 620 F.2d at 272.

It is conceded that the ALU does not contain moving parts. If as in *Texas Instruments* this were the only article before the Court then that case might dictate the outcome in this action. Employing the definition of mechanism utilized in that case, however, the question before this Court is whether the subject merchandise incorporates a structure of working parts which function together to produce an effect, *i.e.* the calculations.

■ Based on testimony at trial and an examination of the merchandise, the Court finds that the keyboard contains moving parts and that the keys must be depressed before there is input with which the ALU can perform its computations. After such computations take place, the printer (which also contains moving parts) usually is relied upon to visualize the results. Thus, the Court finds that the merchandise incorporates a calculating mechanism because of the interrelationship among the keyboard, the ALU, and the printer.

This conclusion does not contradict testimony of plaintiff's witness that the ALU is not connected by a mechanism but only by electrical wires. While it is agreed that no mechanism connects these individual parts, the parts taken as a whole constitute a calculating mechanism. The parts, some of which move, function together to produce an effect, since input from the keyboard is computed in the ALU and the resulting calculations are usually visualized by the printer.

### The C Series Calculators

Plaintiff next argues that even if the C Series Calculators do contain a calculating mechanism, they should be classified under item 676.20, TSUS, as calculating machines specially constructed for multiplying and dividing. Plaintiff contends that since the C Series Calculators perform addition, subtraction, multiplication and division, they are calculating machines; and since they incorporate features for the specific purpose of enabling them to multiply and divide efficiently, they are specially constructed for multiplying and dividing. In support of its contention, plaintiff cites *Clary Corp. v. United States*, 48 Cust.Ct. 416, Abs. 66690 (1962); *Air-Sea-Forwarders and Wholesale Business Machines v. United States*, 55 Cust.Ct. 456, Abs. 69589 (1965), *aff'd* 54 CCPA 67, C.A.D. 907 (1967); and *Plus Computing Machines, Inc. v. United States*, 44 CCPA 160, C.A.D. 655 (1957) which discuss the meaning of paragraphs 353 and 372 of the Tariff Act of 1930, predecessors to item 676.20, TSUS.

Defendant asserts that the C Series Calculators are "more than" or "other than" calculating machines specially constructed for multiplying and dividing and argues that the cases cited by plaintiff "reveal the understanding and intent of Congress that the provision for calculating machines specially constructed for multiplying and dividing was limited to simple machines which basically performed the four arithmetical functions." Defendant points to the pre-programmed functions of the C Series Calculators in support of its position that they are properly classified under item 676.15, TSUS, as accounting, computing and other data processing machines.

The cases cited by plaintiff involve various machines which could multiply and divide by the use of unique structures designed for such purposes. In each case, the court confronted the question whether the unique structures which made the machine capable of multiplying and dividing more efficiently justified its classification separate from those machines which could only multiply and divide by repeated use of the same structures for adding and subtracting. In short, the courts focused upon whether the machines incorporated "special" structures aiding multiplying and dividing justifying classification under paragraphs 353 or 372 or whether the machines were merely adding machines capable only of simple addition or subtraction.

The Court finds these cases do not provide guidance in the present action for two reasons. The cases were decided before enactment of the TSUS and the courts prior to such enactment could not have considered other special categories created for machines incorporating a calculating mechanism such as item 676.15, TSUS, involving accounting, computing and other data processing machines. Also, the C Series Calculators are much more technologically advanced than the machines in the earlier cases and that fact takes the issue of their proper classification beyond the specific analysis in the prior cases refining the distinction between specially constructed machines for multiplication and division and mere adding machines.

The C Series Calculators, unlike the machines in the cited cases, are capable of doing much more than the four basic arithmetic functions. These machines are preprogrammed to guide the user through intricate business computations regarding financial equations for installment, commercial and mortgage loans; future value calculations for individual retirement accounts; and many other banking and some non-banking problems. The machines are priced higher than those which perform only the four arithmetic functions because of such preprogramming and plaintiff markets them by highlighting these preprogrammed aspects. *See* Exhibit C (stating that the "Burroughs C6458 is more than just a new calculator, it's a whole new way of simplifying program input for solutions for your financial problems"); *see also* Exhibit B.

The "more than" doctrine basically says "that from the standpoint of functional analysis the object is a combination not adequately described by a particular tariff term." *Evvan Importers Inc. v. United States*, 85 Cust.Ct. 51, 52–58, C.D. 4869 (1980). It has been held that only the most general rules have evolved from cases dealing with the "more than" doctrine, and that each case must be decided on its own facts. *E. Green & Son, Inc. v. United States*, 59 CCPA 81, C.A.D. 1082, 450 F.2d 1396 (1971); *Ozen Sound Devices v. United States*, 67 CCPA 67, C.A.D. 1246, 620 F.2d 880 (1980).

In the case at hand, the Court finds that the preprogramming is the most significant feature of the C Series Calculators. The preprogramming enables a user to perform mathematical tasks far beyond those of machines designed specifically for multiplication and division. The Court holds that the C Series Calculators are "more than" calculating machines specially constructed for multiplying and dividing and are not properly classifiable under item 676.20, TSUS.

Defendant contends that because of the preprogramming features of the C Series Calculators this merchandise is properly classified under item 676.15, TSUS, as accounting, computing, and other data processing machines. Plaintiff points to the testimony of its witness and argues that the general term "data processing" is limited to devices which have an input and output structure and a large amount of storage and memory potential. Plaintiff also claims that data processors only include devices incorporating hardware working in conjunction with software.

Plaintiff asserts that the C Series Calculators are not data processing machines because they do not have a large amount of memory capacity or storage capability and rely on the use of firmware as opposed to software.

Plaintiff also states that the reliance on firmware makes its machines limited to a very specific purpose, since firmware is programming less susceptible to change than software. Plaintiff claims that the specific purpose is as a calculating machine and that the inferior heading for "calculating machines specially constructed for multiplying and dividing" more specifically describes this multipurpose machine according to such principal purpose. To bolster its position, plaintiff points to Headnote 2, Part 4, Schedule 6 of the TSUS which states:

Unless the context requires otherwise, and subject to headnote 1 to subpart A of this part, a multi-purpose machine is classifiable according to its principal pur-

pose, but if such a machine is not described in a superior tariff heading as to its principal purpose, or if it has no one principal purpose, it is classifiable in subpart H of this part as a machine not specially provided for.

■ The Court must determine whether the data processing machines covered by item 676.15, TSUS are limited as plaintiff has suggested. Where there is an enumeration of specific words of description (*e.g.*, "accounting," "computing") followed by a general term or phrase (*e.g.*, "other data processing machines") the rule of *ejusdem generis* aids in statutory interpretation. *See, e.g., European Trading Co. v. United States*, 19 CCPA 82, 86–87, T.D. 45225 (1931). Under *ejusdem generis*, which means "of the same kind," where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified. *Izod Outerwear, Div. of General Mills, Inc. v. United States*, 9 CIT ——, Slip Op. 85–72 (July 23, 1985).

The Court turns to a lexicographical source prior to enactment of the TSUS for a common meaning of accounting and computing machines:

> Accounting machine: 1: a key-operated machine which dates, codes, tabulates, adds, subtracts, or totals chiefly in the process of keeping business records (as accounts payable or receivable) 2: a business machine that selects information from punched cards fed into it tabulates, adds, subtracts, or totals in various predeterminable ways, and prints the results.

*Webster's Third New International Dictionary*, 13 (1961).

Computing machine: COMPUTER

*Id.* at 468.

> Computer: One that computes: as a: a calculator esp. designed for the solution of complex mathematical problems; specif: an automatic electronic machine for performing simple and complex calculations....

*Id.*

In light of these definitions which evidence the common meaning of such terms at the time of the enactment of the TSUS the Court is not persuaded that the types of data processing machines covered by item 676.15, TSUS, are limited as plaintiff has suggested. A large amount of memory capacity and storage capability and a reliance on software rather than firmware are not prerequisites to classification under this provision of the TSUS.

■ Plaintiff has failed to overcome the presumption of correctness that attaches to Customs classification. The Court finds that the C Series Calculators are data processing machines similar to accounting and computing machines. The Court holds that the principal purpose of these machines is as data processing machines and that they are properly classified under item 676.15, TSUS.

## The TR/TT Series Machines

The final contention made by plaintiff is that the TR/TT Series Machines should be classified under item 676.22, TSUS, as cash registers. In support of this position, plaintiff cites again to Headnote 2, Part 4, Schedule 6, TSUS and argues the principal purpose of these machines is as a cash register.

Plaintiff points to a lexicographical source before enactment of the TSUS, which defines cash registers as

> A business machine that records the amount of money received (as in running daily sales), that usu. has a money drawer, that exhibits the amount of each sale, and that often performs related operations (as totaling receipts, counting particular operations, certifying sales slips, or punching coded data on tape for later recording in ledgers or analysis sheets).

*Webster's Third New International Dictionary* at 347. Plaintiff also cites to the *Explanatory Notes to the Brussels Nomenclature*, Volume III, 895 (1967), under heading 84.52:

> (C) CASH REGISTERS
>
> These machines are used in shops, offices, etc., to provide a record of all money transactions as they occur, and are

often combined with the till or drawer in which the cash is kept. In addition to keeping in the machine a record of each transaction, they often provide a visual indication of the amount involved and a separate printed ticket indicating the amount.

Plaintiff asserts that the testimony of its witnesses and the exhibits introduced at trial show the purpose of the TR/TT Series Machines is to record a broad range of money transactions and to establish effective cash control. Plaintiff contends that the machines: "(1) are used in business; (2) record the amount of money received; (3) record such amounts on a running daily total basis; (4) exhibit the amount of each receipt; (5) total receipts; (6) count particular operations; (7) certify sales slips; and (8) provide coded data on a tape for later recording on other documents or ledgers or accounts." According to plaintiff, the machines fit the description covered by this *eo nomine* provision covering all forms of cash registers.

Defendant cites to a different lexicographical source which defines cash registers as "[A]n automatic mechanical device with keyboard for recording, adding and displaying the amount of cash placed in its money drawer." *Funk and Wagnall's New Standard Dictionary* (1956). Because the TR/TT Series Machines do not contain a cash drawer and are not used to "ring up cash purchases" as its witness testified cash registers traditionally do, defendant argues that the machines are not cash registers. Defendant also asserts that plaintiff does not market the machines as cash registers and that they are not sold to retail stores where customarily cash registers are used.

Defendant further argues that the machines should not be classified as cash registers because they are "more than" cash registers within the meaning of that provision. In support of this claim, defendant points to the variety of functions the TR/TT Series Machines are capable of performing such as the ability to verify account numbers, process and record the transfer of funds among accounts, read magnetically encoded data on credit cards, and provide general auditing.

Based upon the testimony and exhibits presented at trial, the Court finds that the TR/TT Series Machines can be used in business to do the operations enumerated by plaintiff. The machines are also capable of performing the additional operations outlined by defendant, however, and the Court is persuaded that the additional functions make these machines "more than" cash registers.

Plaintiff has failed to overcome the presumption of correctness that attaches to Customs classification. The Court finds that the principal purpose of these machines is as data processing machines similar to accounting and computing machines. The Court holds that the TR/TT Series Machines are properly classified under item 676.15, TSUS.

### Conclusion

The Court concludes that the C Series Calculators and the TR/TT Series Machines incorporate a calculating mechanism and are properly classified as accounting, computing and other data processing machines incorporating a calculating mechanism under item 676.15, TSUS. The Court affirms Customs classification. The action is dismissed.