**BURROUGHS CORPORATION,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

**No. 87–1404.**

United States Court of Appeals,
Federal Circuit.

April 26, 1988.

John S. Rôde, Rode and Qualey, New York City, argued, for plaintiff-appellant. With him on the brief, was William J. Maloney.

Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Dept. of Justice, New York City, argued, for defendant-appellee. With him on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Susan Handler–Menahem.

**322**

Before MARKEY, Chief Judge, and SMITH and ARCHER, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

Burroughs Corporation (Burroughs) appeals from the judgment of the United States Court of International Trade that its merchandise was properly classified under item 676.15 of the Tariff Schedules of the United States (TSUS) as accounting, computing, and other data processing machines incorporating a calculating mechanism.[1] We affirm.

### Issue

Whether the Court of International Trade erred in holding that the merchandise was properly classified under 676.15 of TSUS.

### I. *Background*

Burroughs imported certain office machines invoiced as electronic desk calculators, transaction recorders, and transaction terminals into the United States. All of the machines perform the four basic arithmetic functions: addition, subtraction, multiplication, and division. In addition, the C Series Calculators are preprogrammed to perform complex business computations for installment, commercial, and mortgage loans, future-value calculations for individual retirement accounts, and other banking and nonbanking calculations. The TR/TT Series Machines are used to record a broad range of money transactions and to establish effective cash control. They can record the amount of money received in a particular transaction, as well as keep track of the total amount of money received daily, certify sales slips, total receipts, and provide coded data which can later be recorded in other documents or ledgers. They are also capable of verifying account numbers, processing and recording the transfer of funds among accounts, reading magnetically coded data on credit cards, and providing general auditing.

The United States Customs Service (Customs) classified the machines under item 676.15 of TSUS and assessed duty at the rate of 5.5 percent ad valorem. The superior heading and item 676.15 provide:

Calculating machines; accounting machines, cash registers, postage-franking machines, ticket-issuing machines, and similar machines, all the foregoing incorporating a calculating mechanism:

Accounting, computing, and other data-processing machines.

Headnote 2(b) defines the term "calculating mechanism" as:

[A] *"calculating mechanism "* is one designed to perform one or more of the four arithmetical operations, i.e., addition, subtraction, multiplication, and division.

Burroughs challenged Customs' classification of the machines in the Court of International Trade. Burroughs contended that the machines should have been classified under item 676.30 as office machines not specially provided for, with a duty of 5.0 percent ad valorem. According to Burroughs, the machines do not contain a calculating mechanism within the meaning of Headnote 2(b) and, thus, do not fall within item 676.15.

The Court of International Trade recognized that the term "calculating mechanism" had never been judicially interpreted. However, the court viewed the Court of Customs and Patent Appeals' (CCPA) interpretation of the term "mechanism" in *United States v. Texas Instruments Inc.*[2] as controlling. In *Texas Instruments*, the CCPA had concluded that the term "mechanism" could not cover an integrated circuit which was to be used in a watch because it did not contain moving parts.

The Court of International Trade rejected, as too narrow an interpretation of the definition of "mechanism," Burroughs' argument that, because the calculations in the machines took place completely within the arithmetic logic unit which had no moving parts, the machines did not contain a calculating mechanism. Instead, the court

---

1. *Burroughs Corp. v. United States,* 664 F.Supp. 507 (Ct.Int'l Trade 1987).

2. *United States v. Texas Instruments Inc.,* 620 F.2d 269 (CCPA 1980).

considered whether "the subject merchandise incorporate[d] a structure of working parts which function together to produce an effect, *i.e.* the calculations." The court then found, based on the testimony at trial and an examination of the machines, that the keyboard and the printer contained moving parts and, consequently, that the machines contained a calculating mechanism. The court held that the machines were properly classifiable under item 676.-15 of TSUS.

## II. *The Definition of "Calculating Mechanism"*

Burroughs argues that the definition of "mechanism" in *Texas Instruments* is "authoritative and controlling precedent," as held by the Court of International Trade. The Government contends that the *Texas Instruments* case is not controlling because it was decided in the context of the horological industry. According to the Government, the development of the watch industry at the time TSUS was enacted was substantially different from that of the computer industry. This difference, which is reflected in the legislative history of the provisions in question, suggests that a different meaning was intended by Congress for the term "calculating mechanism."

The Court of International Trade "decline[d] to engage in speculation regarding alleged congressional intent" because it viewed the definition of "mechanism" in *Texas Instruments* as involving TSUS as a whole. We disagree. The *Texas Instruments* case dealt with the horological industry. The term "mechanism" was defined by the CCPA in the course of determining whether the integrated circuit at issue was part of a watch or clock movement. At the time TSUS was enacted, all watches had moving parts. The court in *Texas Instruments* specifically noted that it was not until 1972 that any watches were produced which did not contain moving parts. In contrast, computers using electronic parts were well known in 1962. The

CCPA's definition of "mechanism" must be read in this light and, therefore, it does not control the definition of "calculating mechanism" at issue in this case.

The definition of "mechanism" was not limited to articles which contained moving parts at the time TSUS was enacted. "Mechanism" is defined in The American College Dictionary (1962) by Random House as:

2. the machinery, or the agencies or means, by which a particular effect is produced or a purpose is accomplished.... 4. the structure, or arrangement of parts, of a machine or similar device, or anything analogous.

Webster's New Collegiate Dictionary (1959) defines "mechanism" as:

1. The parts of a machine, taken collectively; the arrangement or relation of the parts of anything as adapted to produce an effect.

As these definitions make clear, the meaning of the term "mechanism" was not limited to something with moving parts. Therefore, we must consider the legislative history to determine what Congress intended when it defined the term "calculating mechanism" in Headnote 2(b).

In the *Tariff Classification Study,*[3] the proposed statute created a classification for office machines in Schedule 6, Part 4, Subpart G. These machines had been classified under paragraphs 353 and 372 of the Tariff Act of 1930. Paragraph 353 contained provisions for "articles having as an essential feature an electrical device or element." Included among the articles classified under paragraph 353 were "calculating machines specially constructed for multiplying and dividing, and having an electric motor as an essential feature," and "adding machines having an electric motor as an essential feature." Paragraph 372 included provisions for accounting machines, adding machines, and calculating machines specially constructed for multiplying and dividing which did not have an electrical device as an essential feature.

**3.** U.S. Tariff Comm'n, *Tariff Classification Study,* Schedule 6.—Metals and Metal Products (1960).

The new classification was designed to combine paragraphs 353 and 372 and to provide a more systematic way to classify office machines.[4] Under the general category of office machines, the proposed statute provided for:

Calculating machines; accounting machines, cash registers, postage-franking machines, ticket-issuing machines, and similar machines, all the foregoing incorporating a calculating mechanism.

The phrase "calculating mechanism" was defined in Headnote 2(b) in terms of the results to be achieved, "designed to perform one or more of the four arithmetical operations," rather than in terms of the method of accomplishing those results. Computers having electronic components were well known to the drafters of TSUS, and nothing in the legislative history indicates that Congress intended to exclude them from the term "calculating mechanism." In fact, a letter from the Electronics Industry Association (EIA) to the Tariff Commission supports the view that computers with electronic components were intended to fall within this provision. With regard to item 676.15, the letter stated:[5]

676.15: *Accounting, computing, and other data-processing machines*

It is proposed by EIA that accounting machines be removed from this category and that it cover only computing and data-processing machines.

From the standpoint of the electronics industry, an accounting machine bears little relationship to a computer and data-processing machine. The latter are highly complex, are based upon electronic theory, and have a high unit value and relatively small market. U.S. production facilities for computers and data-processing machines are in the infant stage while the market for accounting machines is on the decline relatively. Production techniques are largely unrelated.

### Conclusion

We conclude that the term "calculating mechanism" does not require moving parts and was intended to cover machines in which the calculations are performed in integrated circuits. Therefore, the judgment of the United States Court of International Trade that the subject merchandise contains a calculating mechanism within the meaning of Schedule 6, Part 4, Subpart G, Headnote 2(b), of TSUS is affirmed.

AFFIRMED.

---

4. *Id.* at 273-74.

5. Letter from James Secrest, Executive Vice President, Electronics Indus. Ass'n, to Donn

Bent, Secretary, U.S. Tariff Comm'n (July 23, 1959), *reprinted in Tariff Classification Study*, at 872-75.