deprived the Government of any duty, would breed inconsistent results at best, and at worst, disproportionate penalties.

## CONCLUSION

The court stresses that false invoicing is a serious violation of the import laws. Under appropriate circumstances, this court possesses the discretion to award penalties up to the domestic value of the merchandise, with the possible consequence of destroying a business. While the court exercises restraint today, those involved in similar violations should take note that whosoever submits false documents to Customs does so at his own serious peril.

Having considered and weighed all factors relevant to the issue of mitigation, the court determines that $50,000 represents a just penalty under all the facts and circumstances in this case. The court accordingly grants judgment for plaintiff and assesses a civil penalty in the amount of $50,000, plus interest from the date of judgment.

NATIONAL ADVANCED SYSTEMS, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 88–01–00015

(Dated June 24, 1993)

*Brobeck, Phleger & Harrison (Jeffrey S. Kingston* and *Renata B. Hesse)* for plaintiff.
*Stuart E. Schiffer,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, *(Bruce N. Stratvert), Stephen Berke,* United States Customs Service, of counsel, for defendant.

## OPINION

RESTANI, *Judge:* This matter is before the court following trial *de novo* to resolve the issue of proper classification under the Tariff Schedule of the United States ("TSUS"). The product at issue is an Additional Instruction Processor ("AIP"), which is a component utilized to upgrade the Hitachi R–9 line of mainframe computers, for example from a uniprocessor (model 50) to a multiprocessor (model 70). It is essentially the same item (with a few cabling changes) as the basic instruction processor of the R–9 computer series. The United States Customs Service classified the AIP as an "[a]ccounting, computing, [or] other data-processing machine" under item 676.15, TSUS (1986). Plaintiff argues that it is properly classifiable under item 676.54, TSUS, as part of an "automatic data-processing machine." Argument reveals that defendant's al-

642

ternative classifications under items 676.25 and 676.30 are not applicable.[1]

## FACTS

An instruction processor ("IP" or "AIP") performs the logical operations of the R–9 mainframe computer. Although it is a large machine weighing hundreds of pounds, and comprised of many components, functionally it is equivalent to the processor chip found in personal computers ("PCs"), such as the INTEL 486 used in IBM-compatible computers. These tasks may be succinctly described as instruction decoding, execution, memory storage and control. In the IP, the first three functions take place respectively in the instruction decoder, the arithmetic logic unit, and the registers. The registers, however, contain temporary working memory rather than permanent memory. Main memory and major control functions occur in a separate component, the storage control unit ("SCU"). Two other major components of the R–9 series are also needed for the IP to execute instructions and manipulate data. First, both data and programming are introduced into the system through the input/output processor ("IOP"), which communicates with peripheral devices such as terminals, printers and disk drives. Second, the service processor ("SVP") turns the machine on, orders software loading, regulates power and monitors performance.[2] The imported merchandise in issue is dedicated for use with the R–9 line of computers.

The parties disagree as to what is the "heart" of the R–9 mainframe computer. That is, whether so much control and memory is located else-

---

[1] The relevant tariff provisions read:

Subpart G.—Office Machines

Subpart G headnotes:

\*     \*     \*     \*     \*     \*     \*

2. For the purposes of this subpart—
(a) the term *"office machines"* refers to machines which are used in offices, shops, factories, workshops, schools, depots, hotels, and elsewhere, for doing work concerning the writing, recording, sorting, filing, mailing of correspondence, records, accounts, forms, etc., or for doing other "office work", and which have a base for fixing or placing them on a table, desk, wall, floor, or similar place; and
(b) a *"calculating mechanism"* is one designed to perform one or more of the four arithmetical operations, i.e., addition, subtraction, multiplication, and division.

\*     \*     \*     \*     \*     \*     \*

Calculating machines; accounting machines, cash registers, postage-franking machines, ticket-issuing machines, and similar machines, all the foregoing incorporating a calculating mechanism:

676.15        Accounting, computing, and other data-processing machines.

\*     \*     \*     \*     \*     \*     \*

676.25        Other
676.30        Office machines not specially provided for.

\*     \*     \*     \*     \*     \*     \*

Parts of the foregoing:
676.50        Typewriter parts.

TSUS (1986). The relevant provision in Supplement One of the TSUS provides:

676.54        Parts of automatic data-processing machines and units thereof, other than parts incorporating a cathode-ray tube.

TSUS (Supp. I 1986).

2 Witnesses for both parties agree that the service processor, which has its own input/output connections to peripherals, is a computer.

where that the logic center of the computer, the IP or AIP, is no longer the true center. The court finds this a metaphysical debate of no particular use to resolution of this dispute and declines to decide this issue.

DISCUSSION

Plaintiff's chief argument is that the AIP performs no useful work without being attached to the remainder of the R–9 components. Therefore, it cannot be a "computing" or "data processing machine" by itself.[3] Plaintiff asserts that at the time of enactment of the tariff language in 1962 all known accounting, computing and data processing machines did useful work, and because the AIP can do no useful work on its own it is not such a machine. This argument fails. Numerous items which both parties accept as computing or data processing machines are not useful, except as parts of computer systems or of other entities. For example, imbedded computers in cars or washing machines or computers with no peripherals attached cannot perform useful work.

Plaintiff first argues that imbedded computers do useful work; they merely need to be installed to receive and give signals. Second, plaintiff argues that peripherals are clearly accepted in the trade as distinct from computers, and attachment of peripherals is analogous to installing an imbedded computer. The court agrees that peripherals such as printers, disk drives, keyboards and display screens are not commonly known as computers. Similarly, unlike the imbedded computer or the R–9 system without peripherals, the AIP is not commonly known as a computer. Nonetheless, when installed in the R–9 mainframe system, the AIP computes. In contrast, printers, disk drives, keyboards and display screens do not perform the computational role of the computer.[4] Thus, even if the AIP is not a computer, it may be a computing machine or a data processing machine.

The R–9 line consists of stored program digital computers. Plaintiff argues that almost all commercially available computers are of this type and the AIP must meet the definition of a stored memory digital computer to be classified under item 676.15.[5] The main elements of a stored program digital computer are memory, control, processing and input-output links. The AIP has all of these characteristics in differing forms. It is of course a processor; it performs certain control functions, possesses a type of memory, and is linked to other components of the R–9 computer series for various purposes, including input-output. The AIP may require intermediaries in the R–9 system for input and output to and from peripherals, but the peripherals are themselves intermediaries to the real world.

---

[3] "Accounting machine" has a specific meaning. The AIP is not an accounting machine.

[4] Certain peripherals may contain micro processors for sub-functions. The micro processors may compute.

[5] There are other types of computers and item 676.15, TSUS, is very broad, but only the elements of the stored program digital computer class were discussed in detail. Thus for the sake of argument, the court will address those elements.

The AIP's "cache" memory (short-term non-addressable memory used during processing) although of limited duration, is sufficiently analogous to main memory for purposes of this analysis. *Cf. Burroughs Corp. v. United States,* 11 CIT 291, 297, 664 F. Supp. 507, 513 (1987) (electronic desk calculator classified as data processing machine under item 676.15, TSUS, despite lack of large amount of memory or storage capacity), *aff'd,* 845 F.2d 321 (Fed. Cir.), *cert. denied, sub nom. Unisys Corp. v. United States,* 488 U.S. 854 (1988). Although the IP or AIP may not be commonly referred to as a stored program digital computer, it does contain the basic elements of such a machine, albeit in truncated form.

In any case, all that is required for classification under item 676.15, TSUS, is that the article be an accounting, computing or data processing machine with a calculating mechanism. The AIP clearly has a calculating mechanism and is a machine. *See Burroughs,* 845 F.2d at 323–24. It does not matter that it needs to be installed with other R–9 computer components to be useful. *See Fairchild Camera & Instrument Corp. v. United States,* 53 CCPA 122, C.A.D. 887 (1966); *Westinghouse Elec. Int'l Co. v. United States,* 28 Cust. Ct. 209, C.D. 1411 (1952) (camera designed for use only with X-ray apparatus is still camera under *eo nomine* provision). The AIP does not compute until it is installed, but once installed it does computing in the R–9 mainframe computer. The logical and common meaning of computing machine is a machine which computes. Accordingly, the AIP satisfies the very broad language of item 676.15, TSUS.[6]

ORDERED: The classification by the United States Customs Service of the relevant merchandise under item 676.15, TSUS, is correct and judgment will be entered for defendant.

---

[6] Because the AIP is classifiable under item 676.15, it may not be classified as a "part" of an item also classifiable under item 676.15. General Interpretative Rule 10(ij), TSUS (1986).